**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:24-cv-80640-Cannon**

**RABBI NAFTALY HERTZEL,**
**HENYA HERTZEL, and CHABAD**
**ISRAELI CENTER, INC., a Florida not-**
**for-profit corporation,**

 **Plaintiffs,**

**vs.**

**LOGGERS' RUN, INC., a Florida not-**
**for-profit corporation, CAMPBELL**
**PROPERTY MANAGEMENT AND**
**REAL ESTATE, INC., RONALD**
**HARP, and HARRY DIETZ,**

 **Defendants.**

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
<u>**MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

REQUEST FOR HEARING ................................................................................................ ix

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD....................................................................................................... 3

ARGUMENT .................................................................................................................. 4

I.      THE COMPLAINT IS NOT A SHOTGUN PLEADING................................. 4

II.     DISMISSAL IS NOT WARRANTED ON ANY AFFIRMATIVE DEFENSE .............. 6

        A.      Statute of Limitations........................................................................... 6

        B.      Arbitration............................................................................................ 8

        C.      Immunity............................................................................................... 9

III.    THE HERTZELS HAVE STATED A PLAUSIBLE CLAIM FOR RELIEF................ 10

        A.      Interference With Property Rights (Count I) ...................................... 11

        B.      Disparate Treatment (Counts II and VI) ............................................. 13

        C.      Facial Discrimination (Counts III and VII) ........................................ 15

        D.      Hostile Housing Environment (Counts IV and VIII)........................... 19

        E.      Unlawful Interference and Retaliation (Counts V and X) ................... 21

        F.      Land-Use and Permitting Discrimination (Count IX) ........................ 24

CONCLUSION............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Alvarez v. Royal Atl. Devs., Inc.*,
610 F.3d 1253 (11th Cir. 2010) ...........................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................3, 5

*Badilo v. Deerfield Beach*,
2013 WL 3762338 (S.D. Fla. 2013) .......................................................................7

*Bailey v. Swindell*,
89 F.4th 1324 (11th Cir. 2024) ...........................................................................24

*Bloch v. Frischholz*,
587 F.3d 771 (7th Cir. 2009) (en banc) ..........................................................13, 18

*Bluegreen Vacations Unlimited, Inc. v. Mont. L. Firm, LLC*,
2020 WL 12182222 (S.D. Fla. 2020) ......................................................................5

*Burton v. Belle Glade*,
178 F.3d 1175 (11th Cir. 1999) .........................................................................6, 7

*Cano v. 245 C&C, LLC*,
2019 WL 11769098 (S.D. Fla. 2019) ......................................................................5

*Cano v. 245 C&C, LLC*,
2019 WL 11769102 (S.D. Fla. 2019) ....................................................................23

*Cardenas v. Toyota Motor Corp.*,
418 F. Supp. 3d 1090 (S.D. Fla. 2019) ..................................................................6

*Carson v. Makin*,
596 U.S. 767 (2022).......................................................................................15, 19

*CBOCS W., Inc. v. Humphries*,
553 U.S. 442 (2008).............................................................................................10

*Courage to Change Ranches Hldg. Co. v. El Paso Cnty.*,
73 F.4th 1175 (10th Cir. 2023) ...............................................................15, 17, 19

*Curto v. A Country Place Condo Ass'n*,
    921 F.3d 405 (3d Cir. 2019).................................................................................15, 17, 19

*Dixon v. Hallmark Cos.*,
    627 F.3d 849 (11th Cir. 2010) ......................................................................................14

*Evans v. Tubbe*,
    657 F.2d 661 (5th Cir. Sept. 1981) ..............................................................................11

*Evergreen Cmts., Inc. v. Palafox Pres. HOA*,
    213 So. 3d 1127 (Fla. Dist. Ct. App. 2017) .................................................................24

*Fair Hous. Ctr. v. New*,
    577 F. Supp. 3d 908 (S.D. Ind. 2021) ..........................................................................12

*Felder v. Casey*,
    487 U.S. 131 (1988).................................................................................................8, 10

*Fox v. Gaines*,
    4 F.4th 1293 (11th Cir. 2021) .........................................................................11, 13, 20

*Fulton v. City of Phil.*,
    593 U.S. 522 (2021)......................................................................................................16

*Garcia v. Chapman*,
    911 F. Supp. 2d 1222 (S.D. Fla. 2012) ..........................................................................7

*Gorman v. Breeze Condo. Ass'n*,
    2024 WL 2815637 (S.D. Fla. 2024) .........................................................................8, 10

*Gourlay v. Forest Lake Estates Civic Ass'n*,
    276 F. Supp. 2d 1222 (M.D. Fla. 2003), *vacated* 2003 WL 22149660 ..................................21

*Gurevitch v. Emerald Green POA*,
    2025 WL 642347 (S.D.N.Y. 2025).................................................................................24

*Hallmark Devs., Inc. v. Fulton Cnty.*,
    466 F.3d 1276 (11th Cir. 2006) ....................................................................................15

*Halprin v. Dearborn Park Ass'n*,
    388 F.3d 327 (7th Cir. 2004) ..................................................................................18, 20

*Ham v. Portfolio Rec. Assocs.*,
    308 So. 3d 942 (Fla. 2020)............................................................................................24

*Hous. Opportunities Proj. v. Key Colony Condo. Assoc.*,
  510 F. Supp. 2d 1003 (S.D. Fla. 2007) ......................................................................10

*Humphrey v. UPS*,
  200 F. App'x 950 (11th Cir. 2006) ............................................................................11

*Hunt v. Aimco Props., L.P.*,
  814 F.3d 1213 (11th Cir. 2016) ...........................................................................13, 17

*Isaiah v. JPMorgan Chase Bank*,
  960 F.3d 1296 (11th Cir. 2020) .............................................................................6, 10

*Jennings v. Patterson*,
  488 F.2d 436 (5th Cir. 1974) ....................................................................................11

*Jones v. Alfred H. Mayer Co.*,
  392 U.S. 409 (1968) ...................................................................................................10

*Kyle v. Chapman*,
  208 F.3d 940 (11th Cir. 2000) ....................................................................................5

*Lawrence v. Courtyards at Deerwood Ass'n, Inc.*,
  318 F. Supp. 2d 1133 (S.D. Fla. 2004) .....................................................................21

*LeBlanc-Sternberg v. Fletcher*,
  67 F.3d 412 (2d Cir. 1995).................................................................................14, 22

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) ..................................................................................4

*Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*,
  584 U.S. 617 (2018)...................................................................................................14

*McCann v. Tillman*,
  526 F.3d 1370 (11th Cir. 2008) .................................................................................21

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)......................................................................................... passim

*Megna v. Little Switz. of Am. Candy Factory, Inc.*,
  2018 WL 1417705 (D. Colo. 2018) ..........................................................................12

*Mehta v. Beaconridge Imp. Ass'n*,
  432 F. App'x 614 (7th Cir. 2011) ..............................................................................14

*Memphis v. Greene*,
    451 U.S. 100 (1981) ............................................................................................10, 11, 12

*Meyer v. Holley*,
    537 U.S. 280 (2003) ...........................................................................................................24

*Midrash Sephardi, Inc. v. Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ....................................................................................16, 19

*Mont. Imp. Ass'n v. HUD*,
    645 F.2d 291 (5th Cir. May 1981) .....................................................................................10

*Moore v. Lib. Nat. Life Ins. Co.*,
    267 F.3d 1209 (11th Cir. 2001) ...........................................................................................6

*Morris v. First Addition HOA*,
    2017 WL 3666286 (D. Idaho 2017) .............................................................................12, 20

*Moses v. Boynton Cmty. Ass'n*,
    No. 23-01-7752 (Fla. DBPR Arb. Sept. 19, 2023) ..............................................................9

*Mosley v. MeriStar Mgmt. Co.*,
    137 F. App'x 248 (11th Cir. 2005) .....................................................................................21

*NAACP v. LaGrange*,
    940 F.3d 627 (11th Cir. 2019) ...........................................................................................11

*Nason v. Shafranski*,
    33 So. 3d 117 (Fla. Dist. Ct. App. 2010) ..........................................................................24

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) .............................................................................................................7

*Neudecker v. Boisclair Corp.*,
    351 F.3d 361 (8th Cir. 2003) .............................................................................................20

*Noah v. Assor*,
    379 F. Supp. 3d 1284 (S.D. Fla. 2019) .............................................................................22

*Ohana v. 180 Prospect Pl.*,
    996 F. Supp. 238 (E.D.N.Y. 1998) ....................................................................................20

*Payne v. Bracher*,
    582 F.2d 17 (5th Cir. 1978) ...............................................................................................12

*Philippeaux v. Apt. Inv. & Mgmt. Co.*,
　598 F. App'x 640 (11th Cir. 2015) ...................................................................22, 23

*Ray v. Adams & Assocs., Inc.*,
　599 F. Supp. 3d 1250 (S.D. Fla. 2022) ....................................................................6

*Ray v. Foltz*,
　370 F.3d 1079 (11th Cir. 2004) ..........................................................................4, 5

*Reeves v. Carrollsburg Condo. Ass'n*,
　1997 WL 1877201 (D.D.C. 1997) ...........................................................................20

*Reisman v. GMC*,
　845 F.2d 289 (11th Cir. 1988) .................................................................................6

*Renfroe v. Nationstar Mortg., LLC*,
　822 F.3d 1241 (11th Cir. 2016) ..........................................................................4, 5

*Rosado v. Cypress Condo. Ass'n*,
　2011 WL 13269719 (S.D. Fla. 2011) ......................................................................10

*Roy v. Bd. of Cnty. Comm'rs*,
　2007 WL 3345352 (N.D. Fla. 2007)........................................................................12

*Sabal Palm Condo. Ass'n v. Fischer*,
　2014 WL 988767 (S.D. Fla. 2014) ......................................................................8, 10

*Savannah Club Worship Serv., Inc. v. Savannah Club HOA*,
　456 F. Supp. 2d 1225 (S.D. Fla. 2005) ............................................................18, 19

*Shaare Tefila Cong. v. Cobb*,
　481 U.S. 615 (1987)...............................................................................................11

*Smith v. Zacco*,
　2011 WL 12450317 (M.D. Fla. 2011) .....................................................................13

*Sofarelli v. Pinellas Cnty.*,
　931 F.2d 718 (11th Cir. 1991) .................................................................14, 22, 23

*State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*,
　389 F. Supp. 3d 1137 (S.D. Fla. 2018) ....................................................................5

*Sullivan v. Little Hunting Park, Inc.*,
　396 U.S. 229 (1969)...............................................................................................10

*Sun Harbor HOA v. Bonura*,
    2010 WL 10879109 (Fla. Cir. Ct. 2010), *rev'd on other grounds*, 95 So. 3d
    262 (Fla. Dist. Ct. App. 2012) ...............................................................................24

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002).............................................................................................15

*Tandon v. Newsom*,
    593 U.S. 61 (2021)........................................................................................ passim

*Tillman v. Wheaton-Haven Rec. Ass'n*,
    410 U.S. 431 (1973).......................................................................................11, 12

*Trafficante v. Metro. Life Ins. Co.*,
    409 U.S. 205 (1972).............................................................................................11

*Turner v. Butler Farms HOA*,
    No. 15-02-8216 (Fla. DBPR Arb. Nov. 24, 2015)...................................................9

*UAW v. Johnson Controls, Inc.*,
    499 U.S. 187 (1991).......................................................................................17, 19

*United States v. Advocate L. Grps.*,
    2020 WL 6922655 (M.D. Fla. 2020) ....................................................................22

*Wainberg v. Mellichamp*,
    93 F.4th 1221 (11th Cir. 2024) ...........................................................................5, 6

*Watters v. HOA at Bridgewater*,
    48 F.4th 779 (7th Cir. 2022) ................................................................................20

*Watts v. Joggers Run Prop. Owners Ass'n, Inc.*,
    133 F.4th 1032 (11th Cir. 2025) .................................................................... passim

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ............................................................................4, 5

*Whisby-Myers v. Kiekenapp*,
    293 F. Supp. 2d 845 (N.D. Ill. 2003) ...................................................................12

**STATUTES**

42 U.S.C. § 1982 ............................................................................................... passim

42 U.S.C. § 3604(b) ...........................................................................................................13, 14

42 U.S.C. § 3617 ...........................................................................................................................22

Fla. Stat. § 95.11(3)(n)–(o) ...........................................................................................................6

Fla. Stat. § 617.0834(1) ...........................................................................................................9, 10

Fla. Stat. § 720.306(9)(a) .............................................................................................................9

Fla. Stat. § 720.311 ...................................................................................................................6, 9

Fla. Stat. § 760.26 ...................................................................................................................24, 25

Fla. Stat. §§ 760.30(1) ..................................................................................................................8

Fla. Stat. § 760.34 ........................................................................................................................8

Fla. Stat. § 760.37 .......................................................................................................................22

Neighborhood Revitalization Act, 2000 Fla. Laws 3859, 3861 ..................................................25

**OTHER AUTHORITIES**

A. Scalia & B. Garner, Reading Law 56 (2012) ..........................................................................24

*Land Use*, Black's Law Dictionary (12th ed. 2024) ..................................................................24

U.S. Const. Article VI, cl. 2 ..........................................................................................................8

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), counsel requests a hearing on Defendants' Motion to Dismiss. Given the number and complexity of legal issues in dispute, a hearing would aid the Court's decision-making process.

## INTRODUCTION

Plaintiffs Chabad Israeli Center, Inc., Rabbi Naftaly Hertzel, and Henya Hertzel (collectively "the Hertzels") have faced years of antisemitic discrimination and harassment from Defendants Loggers' Run, Inc. ("HOA"), Campbell Property Management and Real Estate, Inc. ("Management Company"), Ronald Harp, and Harry Dietz. Defendants used their considerable influence to discriminate and retaliate against the Hertzels both through formal actions, such as citations and denied permits, and informal ones, such as calling the police when the Hertzels hosted religious events. Defendants also induced neighbors to threaten the Hertzels in antisemitic terms and vandalize their property. Defendants' motives are no secret either. Dietz told the Hertzels that he wished the Nazis had ended the Jewish people during the Holocaust; Harp campaigned against what he believed was the Jews "trying to take over" Loggers' Run; and the HOA Board admitted it "didn't want Jews" in Loggers' Run. The harassment has also only increased since the horrific massacre of over 1,200 people in Israel on October 7, 2023, which tracks a global spike in antisemitic hate. The Hertzels have been left afraid to live in their home and unable to fully support their Jewish community. They have thus sought relief under 42 U.S.C. § 1982, the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the Florida Fair Housing Act ("FFHA"), Fla. Stat. 760.20 *et seq*.

Faced with these allegations, Defendants spend much of their brief litigating a potpourri of non-merits objections, raising a theory of shotgun pleading that courts have repeatedly rejected and prematurely invoking a variety of meritless affirmative defenses. Once they reach the merits, Defendants offer a series of shotgun objections to the Hertzels' claims without clearly distinguishing which arguments apply to which claims. Cutting through the confusion only reveals that the arguments are without merit. The Hertzels have plainly pleaded that Defendants unlawfully discriminated against them in violation of federal and Florida civil rights law.

-1-

## BACKGROUND

Rabbi Naftaly and Henya Hertzel are longstanding residents of Loggers' Run who have dedicated their lives to aiding and encouraging the area's Jewish community. FAC ¶¶ 17–20. They founded the Chabad Israeli Center to serve that community through a range of initiatives, including hosting regular synagogue services for local Orthodox Jews, whose sincerely held beliefs prevent them from driving to religious services on the Sabbath and Jewish holidays. *Id.* ¶¶ 14–16, 44.

The Hertzels' efforts set them on a collision course with Defendants, who have spent several years fighting the growth of the neighborhood's Jewish population. The campaign started with the Hertzels' attempts to obtain HOA approval for a synagogue near one of Loggers' Run's many churches. *Id.* ¶¶ 46–52. Not only did the HOA reject the proposal, it informed the Hertzels that it "didn't want Jews" in Loggers' Run. *Id.* ¶¶ 53–59. It would later pretextually backfill its decision with its Declaration of Covenants ("Declaration") and HOA Rules ("Rules"), which ban "commercial" activities from "recreational" and "residential" areas (*i.e.*, all available space in the community) and then define "commercial area" to include "church … uses." FAC ¶¶ 33–43.

With their proposal denied, the Hertzels and other Jews in Loggers' Run turned to the democratic process, seeking election to the HOA Board. But Defendants stymied their efforts. When it became apparent that Jewish candidates had enough votes to secure election at the 2017 annual election meeting, Harp and other board members left the meeting to deny a quorum, which held the existing board over for the next year. *Id.* ¶¶ 63–66. In the 2018, 2019, and 2023 elections, the HOA and its members engaged in virulently antisemitic campaigning. Harp campaigned specifically against the election of Jews, going door-to-door warning that the "Jews are trying to take over" and using HOA resources oppose Jewish candidates. *E.g.*, *id.* ¶¶ 67–73.

Stonewalled, the Hertzels purchased the Chabad House, a home on a nearby lot in Loggers' Run, with the intent to house an assistant rabbi and host the Jewish congregation in Loggers' Run

for worship and meetings. *Id.* ¶¶ 74–76. Defendants responded with a notice to the Hertzels that features of the Chabad House violated HOA rules. *Id.* ¶ 78. The HOA then sent the Hertzels a letter threatening legal action if they continued. *Id.* ¶ 80. Defendants later blocked the Hertzels from renovating the house for pretextual reasons. *Id.* ¶¶ 81–86. During one interaction over the house, Dietz told Rabbi Hertzel that "they should have ended your kind in the 1930s." *Id.* ¶ 87. The Hertzels ultimately surrendered. They attempted to sell the house to a Jewish buyer, but even that effort was thwarted when the HOA's selective permitting enforcement caused the buyer to withdraw. *Id.* ¶¶ 88–91. The Hertzels eventually sold the house for over $200,000 less than the original offer. *Id.* ¶ 92.

Defendants backstopped their discrimination by repeatedly citing the Hertzels for alleged minor violations of HOA rules that they did not enforce against similarly situated neighbors, scrutinizing how the Hertzels painted their mailbox, moved their trash, cleaned their driveway, mowed their lawn, and fixed their gate. *Id.* ¶¶ 95–98. They likewise cited the Hertzels for hosting religious gatherings at their home despite allowing similarly situated residents to host materially identical Christian services. *Id.* ¶ 99. Defendants also denied the Hertzels access to community resources, prohibiting Henya from speaking at HOA meetings and preventing them from using the community newsletter. *Id.* ¶¶ 102–104. And Defendants amplified their own harassment by encouraging other residents to harass the Hertzels and other Orthodox Jews. *Id.* ¶¶ 105, 110–113.

The Hertzels sent a mediation request to Defendants in December 2023 before filing this suit under 42 U.S.C. § 1982, the FHA, and the FFHA. Relevant here, Defendants responded with a renewed motion to dismiss ("MTD").

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). The complaint "must raise a right to relief above the speculative level, but it need

not contain detailed factual allegations," and allegations are construed "in the light most favorable

to the plaintiff." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016).[1]

<u>**ARGUMENT**</u>

**I.     THE COMPLAINT IS NOT A SHOTGUN PLEADING**

Defendants baselessly claim that the Hertzels filed an improper shotgun pleading. To

warrant that label, a complaint must be so deficient that "it is virtually impossible to know" how

defendants are liable for various claims. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d

1313, 1325 (11th Cir. 2015). No such virtual impossibility exists here.  Rather, the Complaint

properly pleads sufficient detail to determine liability for each Defendant.

Defendants argue this is the type of shotgun pleading that "indiscriminately lumps together

multiple defendants without specifying how each is responsible for acts or omissions that give rise

to a claim for relief." MTD 8–10. But cases that fail this low bar, the Eleventh Circuit has

cautioned, are "relatively rare." *Weiland*, 792 F.3d at 1323; *see, e.g.*, *Magluta v. Samples*, 256 F.3d

1282, 1284 (11th Cir. 2001) ("rambling" complaint that made "no distinction among the fourteen

defendants charged" even though "all of the defendants could not have participated in every act

complained of"). Relevant here, "the fact that defendants are accused collectively does not render

the complaint deficient' where 'the complaint can be fairly read to aver that all defendants are

responsible for the alleged conduct.'" *Ray v. Foltz*, 370 F.3d 1079, 1083 n.2 (11th Cir. 2004)

(quoting *Kyle v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)).

Defendants' charge of shotgun pleading is preposterous. All Defendants are liable for each

count pleaded against "Defendants." Indeed, every count but two alleges that "the HOA, Harp,

---

[1] Unless noted, all alterations, internal quotation marks, and emphases are omitted.

and Dietz" took particular actions that render them liable, *see* FAC ¶¶ 121, 128, 139, 147, 160, 171, 179, 184, and all counts incorporate specific allegations against each Defendant, *see id.* ¶¶ 119, 125, 133, 144, 150, 157, 165, 176, 182, 198. As for the Management Company (and HOA), every count alleges vicarious liability. *See id.* ¶¶ 27, 123, 131, 148, 155, 163, 181, 197, 203; *see also, e.g.*, *Cano v. 245 C&C, LLC*, 2019 WL 11769098, at *4 (S.D. Fla. 2019) (rejecting shotgun argument with similar allegations of vicarious liability). More broadly, the Complaint alleges a coordinated "campaign" to discriminate. FAC ¶ 1; *see also, e.g.*, *Bluegreen Vacations Unlimited, Inc. v. Mont. L. Firm, LLC*, 2020 WL 12182222, at *3 (S.D. Fla. 2020) (rejecting shotgun argument where "the gist of Plaintiffs' Complaint is that all of the Defendants acted in concert").

Defendants' argument to the contrary reduces to questioning Rule 8's standards, which (to reiterate) do "not require detailed factual allegations" and ask only for a "plausible" entitlement to relief. *Iqbal*, 556 U.S. at 678. Indeed, their chief complaint is that the allegations are not "sufficiently specific to set forth the timeframe" of events to determine if the statute of limitations applies. MTD 9–10. But a "statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in its complaint." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). Defendants' other arguments can only improperly construe the allegations in the light least favorable to the Hertzels. *See Renfroe*, 822 F.3d at 1243.

At bottom, the Hertzels have properly "alleged specific facts concerning particular Defendants as well as conduct which implicates multiple Defendants." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1147 (S.D. Fla. 2018) (rejecting shotgun argument); *see, e.g.*, *Kyle*, 208 F.3d at 944; *Ray*, 370 F.3d at 1083 n.2; *Bluegreen*, 2020 WL 12182222, at *3; *Cano*, 2019 WL 11769098, at *4. It is thus not "virtually impossible to know" which claims are pleaded against which Defendants. *Weiland*, 792 F.3d at 1325.

## II.     DISMISSAL IS NOT WARRANTED ON ANY AFFIRMATIVE DEFENSE

### A.     Statute of Limitations

Taking another pass at timeliness, Defendants again invoke the statute of limitations, either to dismiss the Hertzels' FHA and FFHA "claims" or to strike purportedly untimely "allegations." MTD 13–15. However construed, this argument fails.

**1.** Because "a plaintiff is not required to negate an affirmative defense in its complaint, … dismissal on statute-of-limitations grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred." *Wainberg*, 93 F.4th at 1224; *see Reisman v. GMC*, 845 F.2d 289, 291 (11th Cir. 1988) (Florida law). To satisfy this demanding standard, Defendants must establish that there is no set of facts under which the Hertzels' claims are timely. *See, e.g.*, *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1107 (S.D. Fla. 2019) (declining to dismiss where plaintiff did not allege facts to determine when claim accrued). Necessarily, then, the fact that "some of the alleged violations may have occurred during a time-barred period" is not enough. *Ray v. Adams & Assocs., Inc.*, 599 F. Supp. 3d 1250, 1257 (S.D. Fla. 2022).

Setting aside that Defendants elide the longer statutes of limitation in this suit,[2] the Hertzels have not pleaded themselves out of court on timeliness. Indeed, Defendants candidly admit that the "absence of dates" in the Complaint "prevents [them] from determining which claims are timely and which are barred by the … statute of limitations." MTD 13. It is thus unclear why they raise this point. To reiterate, a "complaint need not anticipate and negate affirmative defenses." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020); *accord, e.g.*, *Wainberg*,

---

[2] Section 1982 borrows Florida's four-year residual limitations period for personal-injury claims. Fla. Stat. § 95.11(3)(n)–(o); *Moore v. Lib. Nat. Life Ins. Co.*, 267 F.3d 1209, 1216–17, 19 (11th Cir. 2001); *Burton v. Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999). And mediation tolled the Hertzels' FFHA claims on December 14, 2023. Fla. Stat. § 720.311(1), (2)(a); FAC ¶¶ 114–118.

93 F.4th at 1224. And that is all Defendants accuse the Hertzels of failing to do. Besides, Defendants also appear to acknowledge that the Complaint is replete with timely allegations for each claim. *See* MTD 14 (admitting allegations of conduct "through 2023").

Defendants also suggest that dismissal is warranted specifically as to the FHA and FFHA claims against the HOA, which they claim are dependent on purportedly untimely allegations about the Synagogue and the Chabad House. Not so. The FAC contains numerous allegations regarding actions that HOA agents took, using HOA authority, that violated the FHA and FFHA that are not facially untimely. *See, e.g.*, FAC ¶¶ 81–93, 96–112. And the facial discrimination claims are timely because the discriminatory provisions remain in effect. *See id.* ¶¶ 33–43.

**2.** Defendants fare no better if they seek to only strike allegations they view as untimely. Motions to strike are "disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1243–44 (S.D. Fla. 2012). Here, some of the targeted allegations are actionable.[3] Regardless, statutes of limitation are not rules of evidence, so untimely conduct can be used "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113; *see, e.g.*, *Burton*, 178 F.3d at 1189 n.11 (refusing to exclude "evidence of discrimination that preceded … act[s] occurring within the limitations period"). So Defendants' past discrimination, even if "not actionable [itself], may nonetheless be probative" of their discriminatory animus, retaliatory motive, and campaign of disparate treatment and harassment. *Badilo v. Deerfield Beach*, 2013 WL 3762338, at *2 (S.D. Fla. 2013).

---

[3] Otherwise untimely pleadings are timely for at least the Hertzels' "hostile environment claims," which by "their very nature involve[] repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). For those claims, "behavior alleged outside of the statutory time period is permissible for the purposes of assessing liability." *Id.* at 105.

### B.       Arbitration

Defendants next claim that this "Court is without jurisdiction to hear or rule on any issues or challenges" to HOA elections because Florida law provides that "[t]he exclusive remedy for an election dispute is arbitration by [the Division of Florida Condominiums, Timeshares, and Mobile Homes] and such challenges must commence within 60 days of … election results." MTD 10 (citing Fla. Stat. §§ 720.311(1), 720.306(9)(a)). This argument fails on multiple grounds.

**1.** These requirements are incompatible with the Hertzels' claims. To start, Florida law cannot divest a federal court of federal jurisdiction over federal claims. *See* U.S. Const. art. VI, cl. 2. Congress has granted federal courts jurisdiction over and created federal causes of action to enforce the FHA and § 1982. These provisions preempt state laws that "immunize[] … conduct" or "that provide only a truncated period of time within which to file suit." *Felder v. Casey*, 487 U.S. 131, 139–40 (1988). Unsurprisingly, then, this Court has repeatedly refused to apply this defense to federal claims. *See, e.g.*, *Gorman v. Breeze Condo. Ass'n*, 2024 WL 2815637, at *4 (S.D. Fla. 2024); *Sabal Palm Condo. Ass'n v. Fischer*, 2014 WL 988767, at *4 (S.D. Fla. 2014).

The Hertzels' state-law claims are likewise unaffected. The FFHA mandates that plaintiffs are "not required to petition for an administrative hearing or exhaust administrative remedies before commencing [an] action." Fla. Stat. § 760.34(4). More broadly, the FFHA vests "authority and responsibility for administering" the Act in the Florida Commission on Human Relations, and it gives plaintiffs the option of filing an administrative complaint there within one year. Fla. Stat. §§ 760.30(1), 760.34(1)–(2). Mandating arbitration on a tight timeline before an entirely different agency is inconsistent with both the availability of administrative relief and the delegation itself.

**2.** Separately, Defendants' reading of Florida law is unambiguously wrong. The arbitration provision they invoke mandates that "[e]lection disputes … must be arbitrated by the department

*or filed in a court of competent jurisdiction*." Fla. Stat. § 720.311(1) (emphasis added). Far from

*requiring* arbitration, this section plainly provides only an optional alternative.

That leaves Defendants to argue that the 60-day deadline must apply, but they never explain

how it does. The provision requires that any "challenge to the election process … be commenced

within 60 days after the election results are announced." Fla. Stat. § 720.306(9)(a). This suit is not

a "challenge to the election process." Section 720.306(9)(a) makes clear that "election process"

refers to "the procedures set forth in the governing documents of the association" for the

"[e]lections of directors." *Id.*; *see, e.g.*, *id.* (exempting HOA from a nomination requirement "if

the *election process* allows candidates to be nominated in advance"); *Moses v. Boynton Cmty.

Ass'n*, No. 23-01-7752 (Fla. DBPR Arb. Sept. 19, 2023) (ruling that the "*election process*

employed by the Association deviated significantly from the *process* required by its governing

documents"). Here, the Hertzels are not merely alleging that the HOA failed to follow its own

procedures or seeking to unwind completed elections.[4] Every single count in the Complaint details

theories of liability and incorporates allegations that are not contingent on election procedures.

*See, e.g.*, FAC ¶¶ 121, 128-29, 146-47, 152-53, 160-61, 178-79, 192-94, 200-201. The deadline

thus does not apply.

### C.     Immunity

Defendants next contend that Harp is statutorily immune under Florida's protections for

nonprofit officers. *See* Fla. Stat. § 617.0834(1). But this provision too is inapposite. **First** and as

above, the Supremacy Clause precludes its application to the Hertzels' federal claims. *See supra*

---

[4] The only allegations that even arguably bear on election process concern the failure to conduct any election in February 2017. *See* FAC ¶¶ 63–66. But no claim is dependent on those allegations. Besides, the deadline triggers "after the election results are announced," Fla. Stat. § 720.306(9)(a), so it does not apply if "no election occur[s]," *Turner v. Butler Farms HOA*, No. 15-02-8216 (Fla. DBPR Arb. Nov. 24, 2015) (rejecting timeliness claim).

at 8; *Felder*, 487 U.S. at 139–40; *Gorman*, 2024 WL 2815637, at \*4; *Sabal Palm*, 2014 WL 988767, at \*4. **Second**, the provision only immunizes covered individuals from being "personally liable for monetary damages," Fla. Stat. § 617.0834(1), and the Hertzels also seek declaratory and injunctive relief. *See* FAC at 28. **Third**, the Hertzels are under no obligation to proactively refute this affirmative defense, *see, e.g.*, *Isaiah*, 960 F.3d at 1304, and immunity is not clear from the face of the Complaint. Indeed, the Hertzels have plausibly alleged facts establishing otherwise. Immunity dissipates if the official's actions constitute "[r]ecklessness or … wanton and willful disregard of human rights." Fla. Stat. § 617.0834(1)(b)(3). FHA claims alleging intentional discrimination necessarily satisfy this standard at the pleading stage. *See, e.g.*, *Rosado v. Cypress Condo. Ass'n*, 2011 WL 13269719, at \*3 (S.D. Fla. 2011); *Hous. Opportunities Proj. v. Key Colony Condo. Assoc.*, 510 F. Supp. 2d 1003, 1013–14 (S.D. Fla. 2007); *Sabal Palm*, 2014 WL 988767, at \*4. Here, the Hertzels have alleged that Harp intentionally discriminated against them when taking the actions underlying each claim in this suit. *See* FAC ¶¶ 122, 129-30, 147, 154, 160-62, 164, 179-80, 202. There is thus no basis to apply this defense.

## III.     THE HERTZELS HAVE STATED A PLAUSIBLE CLAIM FOR RELIEF

Defendants' merits arguments each must overcome statutes calibrated to protect religious and racial minorities like the Hertzels. The Supreme Court has repeatedly recognized that 42 U.S.C. § 1982's protections are "broad and sweeping," *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969), and instructed courts to "accord [§ 1982] a sweep as broad as its language." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968); *accord CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448 (2008) ("broad"); *Memphis v. Greene*, 451 U.S. 100, 120 (1981) ("broadly construed"). Similarly, the FHA "is a comprehensive statute which forbids discrimination in practically every aspect of the housing industry," *Mont. Imp. Ass'n v. HUD*, 645 F.2d 291, 294 (5th Cir. May 1981), through "broad and inclusive" language that must be liberally construed in

favor of relief, *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972). It thus "prohibits a wide range of conduct, has a broad remedial purpose, and is written in decidedly far-reaching terms." *NAACP v. LaGrange*, 940 F.3d 627, 631–32 (11th Cir. 2019). The FFHA is construed in similarly broad terms. *See Fox v. Gaines*, 4 F.4th 1293, 1295 n.4 (11th Cir. 2021).

Faced with these protective statutes, Defendants can only batch the Hertzels' distinct claims and offer shotgun blasts of disjointed objections against the claims *en masse*. These objections do nothing to undermine that the Hertzels have plainly satisfied their pleading burdens.

### A.    Interference With Property Rights (Count I)

Section 1982 guarantees the "right … to inherit, purchase, lease, sell, hold, and convey real and personal property." It "prohibits all racial discrimination, private as well as public, with respect to property rights." *Evans v. Tubbe*, 657 F.2d 661, 662 n.2 (5th Cir. Sept. 1981). It thus requires plaintiffs "to demonstrate that [they were] deprived of [their] property interest because of an intentional act based on racial animus." *Humphrey v. UPS*, 200 F. App'x 950, 952 (11th Cir. 2006).

The Supreme "Court has broadly construed [§ 1982's] language to protect … [the] right to acquire *and use* property." *Greene*, 451 U.S. at 120, 123. In other words, § 1982 protects "the bundle of rights for which an individual pays when buying or leasing within the area." *Tillman v. Wheaton-Haven Rec. Ass'n*, 410 U.S. 431, 437 (1973). Courts have thus recognized that § 1982 protects a wide array of rights connected to property use, such as "membership benefits" in using a community pool, *id.*, the right to use a street, *Jennings v. Patterson*, 488 F.2d 436, 441–42 (5th Cir. 1974), and the right to be free from discriminatory easements, *Evans*, 657 F.2d at 663. Indeed, the Supreme Court recognized that § 1982 protects Jews in a case involving vandalism to a synagogue, *see Shaare Tefila Cong. v. Cobb*, 481 U.S. 615, 616 (1987), while the Eleventh Circuit has held that it extends to benefits provided and restrictions imposed by HOA membership, *Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1045 (11th Cir. 2025).

-11-

**1.** Here, Defendants violated the Hertzels' rights in a breathtaking array of ways. They denied and delayed attempts to improve property, *e.g.*, FAC ¶¶ 4, 82-86, 99; threatened enforcement whenever the Hertzels tried to host events in the same manner as similarly situated residents, *id.* ¶ 80, 99-100, 109; obstructed the sale of property, *id.* ¶ 88-90; repeatedly cited the Hertzels for minor alleged violations that were not enforced against similarly situated residents, *id.* ¶¶ 96-98; denied them use of community resources like the newsletter and participation at HOA meetings, *id.* ¶¶ 102-103; and more broadly cultivated a hostile environment, *id.* ¶¶ 105-113. None of this discrimination is new to § 1982, which courts have enforced in similar circumstances.[5]

Animus easily follows. Because race "is not to be considered in any way" under § 1982, plaintiffs need prove only that some animus existed regardless of "the presence of other factors." *Payne v. Bracher*, 582 F.2d 17, 18 (5th Cir. 1978). Here, the Hertzels have alleged that the HOA, Harp, and Dietz made discriminatory statements when interfering with the Hertzels' property rights. *See, e.g.*, FAC ¶¶ 55, 60, 67, 70, 86-87; *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003). And circumstantially, the Hertzels have alleged that the offending actions were not taken against similarly situated residents. *See, e.g.*, FAC ¶¶ 82, 96-99, 103; *Roy*, 2007 WL 3345352, at *9. That is more than enough to allege a plausible claim.

**2.** Other than a conclusory claim that the Complaint does not plead animus, Defendants offer two responses, neither of which has merit. *First*, they contend that they were simply enforcing their categorical bans on religious practice in the Declaration and Rules, which they claim is not

---

[5] *See, e.g.*, *Tillman*, 410 U.S. at 437 (community pool access); *Green*, 451 U.S. at 124 (limiting use of public street); *Watts*, 133 F.4th at 1045–46 (selective enforcement of HOA rules and denial of access to community benefits, including participation in HOA meetings); *Roy v. Bd. of Cnty. Comm'rs*, 2007 WL 3345352, at *9 (N.D. Fla. 2007) (actions that "impaired plaintiffs' ability to use, develop, and sell their property"); *Fair Hous. Ctr. v. New*, 577 F. Supp. 3d 908, 926–27 (S.D. Ind. 2021) (selective enforcement by HOA); *Megna v. Little Switz. of Am. Candy Factory, Inc.*, 2018 WL 1417705, at *5 (D. Colo. 2018) (selective enforcement of restrictive covenants).

discrimination. *See* MTD 20–21. But the Complaint plainly alleges that Defendants' use of the rules was mere "pretext" for racial (and religious) discrimination and that they did not equally enforce those rules against similar comparators. *See, e.g.*, FAC ¶¶ 57, 82-85, 95-99. *Second*, Defendants contend that § 1982 does not apply unless the Hertzels' home is "made unavailable to them." MTD 21. That position is flatly contradicted by decades of precedent, including in the context of HOA rules and benefits. *See Watts*, 133 F.4th at 1045–46; *supra* at 11.

> ### B.       Disparate Treatment (Counts II and VI)

The FHA and FFHA both make it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race" or "religion." 42 U.S.C. § 3604(b); Fla. Stat. § 760.23(2). These provisions protect plaintiffs (1) "from receiving differential or less favorable treatment in housing terms, conditions, … privileges," services, or facilities (2) "if the but-for cause of that treatment is" race or religion. *Fox*, 4 F.4th at 1296.

> **1.** The Hertzels have plausibly alleged religious and racial discrimination: Defendants forced the Hertzels' to remove a Sukkot as an unauthorized lawn structure while not citing the Hertzels' immediate neighbor for having a much more intrusive chicken coop. FAC ¶ 97; *see Bloch v. Frischholz*, 587 F.3d 771, 786–87 (7th Cir. 2009) (en banc) (association's discriminatory application of decoration policy to remove Jewish mezuzahs). They selectively enforced minor alleged violations against the Hertzels that they did not against other residents. *See id.* (similar allegations); *Watts*, 133 F.4th at 1037, 1042–43 (similar allegations); FAC ¶¶ 95–98. They "intentionally exclud[ed Henya] from Association meetings." *Smith v. Zacco*, 2011 WL 12450317, at *7 (M.D. Fla. 2011); *see Watts*, 133 F.4th at 1036, 1042–43 (plaintiff limited in speaking time at HOA meetings); FAC ¶ 102. They denied the Hertzels access to benefits provided to other residents. *See, e.g.*, *id.* ¶¶ 102–103; *Watts*, 133 F.4th at 1042–42; *Hunt v. Aimco Props., L.P.*, 814

F.3d 1213, 1224 (11th Cir. 2016); *Mehta v. Beaconridge Imp. Ass'n*, 432 F. App'x 614, 617 (7th Cir. 2011). And following election campaigns premised on stopping Jews from "taking over," Defendants opposed the Hertzels' efforts to develop the Chabad House for a rabbi and cited the Hertzels for home religious events while allowing materially identical developments and activities from similarly situated non-Jews. FAC ¶¶ 67-72, 74-88, 99; *see LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 430–31 (2d Cir. 1995) (similar election, adoption of rules to limit Jewish in-home services, and enforcement of those rules to prevent services). Perhaps the clearest example is the HOA's refusal to advertise the Hertzels' Chanukah parade expressly because it was a religious event. *See* FAC ¶¶ 104, 129. That explanation is the sort of rare "direct evidence of discrimination" that is immediately actionable. *Dixon v. Hallmark Cos.*, 627 F.3d 849, 854–55 (11th Cir. 2010).

That Defendants treated the Hertzels worse than similarly situated residents is sufficient to plausibly allege a violation of § 3604(b). But the Hertzels offer more. They have also alleged direct discriminatory statements by Dietz, Harp, and the HOA, FAC ¶¶ 2, 6, 55, 60, 70, 87, 103, and a history of religious and racial animosity from their reactions to the synagogue proposal and HOA elections, *id.* ¶¶ 44-73; *see, e.g.*, *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 722 (11th Cir. 1991) ("statements in the newspaper suggest[ing] racial animus" were sufficient); *Watts*, 133 F.4th at 1043 (racial harassment by neighbors and racial statements by HOA board members sufficient); *cf. Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 639 (2018) (holding that "official expressions of hostility to religion" in comments reflected discrimination). These allegations only underscore that the Hertzels have alleged a violation of § 3604(b).

**2.** Defendants have no serious response. As noted, their arguments regarding animus and facially discriminatory rules are meritless. *See supra* at 12–13; *infra* at 15–19. Their only other defense is that the Hertzels failed to plead a *prima facie* case under *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973), by not "establish[ing] that the Defendants' action(s) made housing options significantly more restrictive for … Orthodox Jews." MTD 22–23. Both premises are wrong. *McDonnell Douglas* does not apply to pleadings, *see Swierkiewicz v. Sorema*, 534 U.S. 506, 510–11 (2002), and the "significantly more restrictive" standard is relevant to only disparate impact claims, *Hallmark Devs., Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1286 (11th Cir. 2006).

### C.    Facial Discrimination (Counts III and VII)

The FHA and FFHA's antidiscrimination provisions apply with even greater force where a "policy facially discriminates on the basis of a protected trait." *Curto v. A Country Place Condo Ass'n*, 921 F.3d 405, 410 (3d Cir. 2019). In such a case, "the protected trait by definition plays a role in the decision-making process." *Id.* Thus, a facially discriminatory policy "requires no more proof of discriminatory motive." *Courage to Change Ranches Hldg. Co. v. El Paso Cnty.*, 73 F.4th 1175, 1191 (10th Cir. 2023); *accord Curto*, 921 F.3d at 410.

**1.** The HOA's Declaration and Rules facially discriminate against religion. The Supreme Court has repeatedly recognized in related contexts that regulating activities "solely because of their religious character" while allowing comparable secular practices "is discrimination against religion." *Carson v. Makin*, 596 U.S. 767, 779–81 (2022). As applied to policies and rules, "regulations are not neutral … whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). These rules apply neatly to the FHA and FFHA's prohibitions on discrimination against religion. *See, e.g.*, *Courage*, 73 F.4th at 1194–95 (occupancy limit on disabled home was facially discriminatory because it treated other structured group-living arrangements differently); *Curto*, 921 F.3d at 410 (condo association's policy separating pool use by sex was facially discriminatory).

Here, the Declaration's definition of "commercial area" includes any property "which may be utilized for … church … uses." FAC ¶ 34. It then mandates commercial areas (including

religious uses) cannot "be established nor maintained on any Residential Property or in any Recreation Area," which encompasses all usable property in Loggers' Run. *Id.* ¶¶ 35–36, 43. This ban becomes discriminatory when paired with the range of comparable secular "recreational" facilities and "residential" uses that the Declaration allows in the community.

For "recreational" facilities, the Declaration allows "riding stables … boating facilities … clubhouses containing meeting rooms and/or game rooms … restaurant facilities … bowling facilities, theatres and any other … facilities utilized or intended for use for recreational or social purposes." FAC, Ex. G, at 6. Thus, the Declaration would permit the Hertzels to go bowling but not host a prayer gathering in common areas. And the HOA would consider a proposal from the Hertzels for a clubhouse, restaurant, or movie theater, but not a synagogue or a church, even though the facilities are similarly situated as meeting spaces for community events and practices. *See, e.g.*, *Tandon*, 593 U.S. at 63 (holding that a ban on "at-home religious exercise" was discriminatory when the State allowed "movie theaters" and "indoor restaurants"); *Midrash Sephardi, Inc. v. Surfside*, 366 F.3d 1214, 1234 (11th Cir. 2004) (holding that a facility's "religiosity" is an impermissible consideration when addressing substantial similarity under RLUIPA).[6]

The facial discrimination is even starker in comparison to residential areas. The Declaration and Rules prohibit any "commercial … use of any portion of the Residential Property" except for a narrow category of "home occupations" that would exclude backyard Bible studies and large religious gatherings inside the home. FAC ¶¶ 37–38 (requiring, *inter alia*, that (1) at most one person outside the home can assist, (2) less than 25% of the main dwelling is used, (3) all activities

---

[6] The Covenants are separately discriminatory because they granted a discretionary exemption to the developer, who used it to build select religious buildings before locking out any religious facilities he did not consider (or want). *See* FAC ¶¶ 35, 41, 58; *id.* Ex. A, at 8–9. That is the sort of "individual exemption[]" that requires a concomitant exception for religious need. *Fulton v. City of Phil.*, 593 U.S. 522, 534 (2021).

-16-

are limited to the main home, and (4) "no external evidence of the existence" of the religious service can be seen). Other than the ban on religious and commercial activities, the HOA does not attempt to (and could not) micromanage its residents' activities within their home—from book clubs to birthday parties. FAC ¶ 42. Because these provisions subject religious uses to disfavored treatment relative to comparable secular activities, they are facially discriminatory. *See Tandon*, 592 U.S. at 6; *see also, e.g.*, *Courage*, 73 F.4th at 1194–95 (in-home occupancy limit on the basis of protected status was facially discriminatory).

**2.** Defendants' responses are meritless. First, they attempt to justify the presence of multiple churches in the community by stating that they lack the ability to control those properties. MTD 23–24. Setting aside that their assertions are absent from the pleadings, it is an independent problem that the Declaration created a discretionary exemption for a developer who then used it to favor one religion. *See supra* note 6. It is irrelevant that the discriminatory policy itself purports to bind the decisionmaker from curing the discrimination—here, by requiring an amendment to the covenants to expand HOA control over developer property. *See* FAC Ex. G, at 27. More importantly, this argument has no bearing on the Hertzels' primary theory of facial discrimination—that the HOA privileges *secular* activities over *all* religious uses. The HOA undeniably enforces the rules at issue under *that* theory. *See id.* at 7.

Second, Defendants stress that they are not state actors. So what? It is undisputed that "discrimination against a homeowner by an HOA violates the FHA" and FFHA. *Watts*, 133 F.4th at 1042; *accord, e.g.*, *Hunt*, 814 F.3d at 1225. That rule does not change simply because Defendants violate civil rights law via facially discriminatory policies, rather than discriminatory enforcement of neutral policies. *See, e.g.*, *Curto*, 921 F.3d at 410 (holding that facially discriminatory association rules violate FHA); *see also UAW v. Johnson Controls, Inc.*, 499 U.S.

187, 197–99 (1991) (employer's facially discriminatory workplace policy violated Title VII); *Bloch*, 587 F.3d at 785 (discriminatory reinterpretation of HOA rule).

Defendants rest their argument to the contrary on a single case, decided at summary judgment, that considered an HOA policy banning the use of any "common area" for "any religious service." *Savannah Club Worship Serv., Inc. v. Savannah Club HOA, Inc.*, 456 F. Supp. 2d 1223, 1225 (S.D. Fla. 2005). Judge Middlebrooks upheld the policy on two grounds: (1) the provision did not "cause a complete denial of access" to common areas or treat plaintiffs "differently from persons of *other religions*"; and (2) the HOA had non-pretextual reasons for its policy under the *McDonnell Douglas* framework—including its need to enforce "the right to be free from religion" and its fear that religious meetings could "impede[] the rights of other members in their enjoyment of [shared] facilities." *Id.* at 1232–33.

Procedural posture aside, the Hertzels respectfully submit that both rulings in this decision are in irreconcilable conflict with a host of binding precedent. For the first holding, *Watts*, among many other decisions, makes clear that the FHA is triggered if common area access or another HOA benefit is "limited," not just when it is completely denied. 133 F.4th at 1042. Indeed, *Savannah Club*'s authority for its conclusion—the "*Halprin* line of cases," 456 F. Supp. at 1229—was later overruled by the Seventh Circuit precisely to allow FHA claims against HOAs, *see Bloch*, 587 F.3d at 779–82 (narrowly construing and partially overruling *Halprin v. Dearborn Park Ass'n*, 388 F.3d 327 (7th Cir. 2004)). Similarly, the fact that the HOA purportedly enforces its discriminatory rules against all faiths (except for a few churches) means nothing. The FHA contains no specialized definition of religious "discrimination," so the normal understanding of that term applies. Thus, the HOA's policies "are not neutral and generally applicable … whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 593

U.S. at 62; *see, e.g.*, *Carson*, 596 U.S. at 781 (holding that funding private school tuition "so long as the schools are not religious … is discrimination against religion"); *Midrash* 366 F.3d at 1234 (holding that under RLUIPA, "governments should not treat secular motivations more favorably than religious motivations").

For the second ruling, *Savannah Club* erred by applying the *McDonnell-Douglas* framework to facial discrimination. Again, a facially discriminatory policy is itself proof of discriminatory motive, so *McDonnell Douglas* does not apply. *Courage*, 73 F.4th at 1191, 1193; *Curto*, 921 F.3d at 410; *see also Johnson Controls*, 499 U.S. at 200 (finding violation without considering burden shifting); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (burden-shifting does not apply to direct evidence of discrimination). Even if it did, the court's finding that the HOA enforced the "right to be free from religion," 456 F. Supp. 2d at 1233, *admits* discrimination, *see Tandon*, 593 U.S. at 62; *Carson*, 596 U.S. at 780.

At bottom, the HOA's policies openly discriminate against religion, both in common areas and within the privacy of resident homes. Such a result is incompatible with the FHA and FFHA.[7]

### D.    Hostile Housing Environment (Counts IV and VIII)

The FHA and FFHA protect against "hostile housing environments," which subject a plaintiff to unwelcome conduct on the basis of a protected characteristic that is "sufficiently severe

---

[7] Courts adjudicating facial-discrimination claims against governmental policies have considered whether the state actor's classification on a protected basis can be justified. But private actors necessarily cannot advance government interests, so the only justifications for facial discrimination are those found in the FHA. *See Curto*, 921 F.3d at 410–11 (not considering interest balancing for condo association's facially discriminatory policy); *Johnson Controls*, 499 U.S. at 200 (holding that an employer's facially discriminatory policy violated Title VII "unless" the employer could satisfy a narrow statutory exception). But even if an HOA's facial discrimination could be justified, the Complaint provides no basis to conclude that the facial discrimination here is justified.

or pervasive so as to interfere with or deprive the plaintiff of her right to use or enjoy her home." *Fox*, 4 F.4th at 1295–97 & nn.5–6 (citing § 3604(b)).

**1.** The Hertzels have plausibly alleged such a claim. To start, Defendants' harassment was sufficiently severe. Among other vicious behavior, they and their agents repeatedly threatened the Hertzels with formal consequences if they practiced Orthodox Judaism with other residents, *id.* ¶¶ 80, 99, repeatedly called the police on the Hertzels, *id.* ¶¶ 5, 99, engaged in their own internal surveillance, *id.* ¶ 100, and hurled pointed antisemitic invective, *id.* ¶¶ 6, 67-73, 87. This harassment likewise "instigated others in the community." FAC ¶¶ 7, 105. The Hertzels have faced vandalism, violent threats, and still more police calls and antisemitic invective towards both them and their children from other residents. *See id.* ¶¶ 7, 105–112. These results are unsurprising. Defendants are "influential members of the community" and "actively encourag[ed] others to engage in hostile behavior." *Id.* ¶ 6–7, 28, 105. And as the temperature rose, Defendants resisted the Hertzels' attempts to respond, denying them the opportunity to post a newsletter notice that sought to defuse tensions and scheduling meetings regarding complaints against the Hertzels during Jewish religious obligations to ensure the Hertzels could not attend. *Id.* ¶¶ 8, 103, 110. As a wealth of precedent makes clear, Defendants' harassment is sufficiently severe to state a claim even in isolation, to say nothing of in combination with the actions of other residents.[8]

---

[8] *See, e.g.*, *Halprin*, 388 F.3d at 328, 330 (HOA president used antisemitic slurs, vandalized property, enforced rules to restrict property use, and prevented plaintiffs from responding to harassment); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 365 (8th Cir. 2003) (constant harassment from residents ignored by landlord); *Watters v. HOA at Bridgewater*, 48 F.4th 779, 787–88 (7th Cir. 2022) (string of threats and slurs by HOA officials); *Morris v. First Addition HOA*, 2017 WL 3666286, at *1–3 (D. Idaho 2017) (anti-Christian slurs and interference with Christian events); *Ohana v. 180 Prospect Pl.*, 996 F. Supp. 238, 239 (E.D.N.Y. 1998) ("racial and anti-Jewish slurs and epithets, threats of bodily harm, and noise disturbances"); *Reeves v. Carrollsburg Condo. Ass'n*, 1997 WL 1877201, at *8 (D.D.C. 1997) (HOA "tolerating and facilitating … harassment").

Defendants' discriminatory animus is also well-established by the allegations, *see, e.g.*, *supra* at 12–14, and it is only underscored by the fact that the neighbors who joined the harassment campaign likewise did so on antisemitic terms, *see* FAC ¶¶ 67-73, 105-112.

**2.** Defendants' responses are again meritless. They first argue that HOAs cannot be held liable for their "failure to stop unnamed neighbors and residents" or to prevent "isolated acts of discrimination." MTD 27–28. While the Hertzels dispute that categorical legal premise,[9] the more obvious problem is that the Hertzels have pleaded far more than simple inaction. Defendants didn't merely fail to put out the fire of antisemitism; they actively stoked its flames. The claim arises from Defendants' own harassment of the Hertzels, as well as their "coordinat[ion] with, encourage[ment of], and motiva[tion of] harassment by other Loggers' Run residents" and their "actions to prevent the Hertzels from mitigating tensions." FAC ¶¶ 147, 179.

Finally, Defendants argue that the harassment was not sufficiently severe. MTD 28–29. But the decisions they cite involved only "racially derogatory language alone" that was "sporadic and isolated." *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008); *accord Mosley v. MeriStar Mgmt. Co.*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005). Clearly, more is involved in this case. *See, e.g.*, *supra* at 20. By avoiding the facts the Hertzels pleaded, Defendants offer no reason to dismiss the harassment claims that the Hertzels actually brought.

E.    **Unlawful Interference and Retaliation (Counts V and X)**

The FHA and FFHA make it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or

---

[9] The decisions Defendants cite concluded that the FHA "applies only to discrimination related to the acquisition or sale and rental of housing." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1142 (S.D. Fla. 2004); *see Gourlay v. Forest Lake Estates Civic Ass'n*, 276 F. Supp. 2d 1222, 1233 (M.D. Fla. 2003), *vacated* 2003 WL 22149660. Intervening precedent abrogates this premise. *See, e.g.*, *Watts*, 133 F.4th at 1040–42; *see also supra* note 8.

on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the Acts. 42 U.S.C. § 3617; Fla. Stat. § 760.37. Liability under these provisions does not require proving an independent violation, and it encompasses post-acquisition conduct. *Philippeaux v. Apt. Inv. & Mgmt. Co.*, 598 F. App'x 640, 644–45 (11th Cir. 2015); *Noah v. Assor*, 379 F. Supp. 3d 1284, 1294 (S.D. Fla. 2019); *United States v. Advocate L. Grps.*, 2020 WL 6922655, at *2 (M.D. Fla. 2020). Indeed, these claims "typically involve disputes such as those between neighbors or between a homeowner and a homeowners' association." *Id.*

**1.** The Hertzels have plausibly alleged unlawful interference and retaliation. The clearest violation arises from Defendants' opposition to developing the Chabad House for a rabbi to occupy. FAC ¶¶ 74–93. Their fusillade of enforcement threats and permitting opposition led the Hertzels to abandon not only that plan, but their subsequent attempt to sell the house to a Jewish buyer. *Id.* ¶¶ 88–90. These facts are on all fours with *Sofarelli*. 931 F.2d 718. There, the plaintiff attempted to develop a house to "potentially … sell the house and lot to a minority purchaser." *Id.* at 720–21. Defendants resisted the move, including by "leaving a note threatening 'to break [plaintiff] in half' … and running up to one of [the plaintiff's] trucks, hitting it, shouting obscenities and spitting." *Id.* at 722. They likewise expressed abstract worries that the plaintiff might sell the house to a black person. *Id.* The Eleventh Circuit held that these facts constituted "unlawful interferences with [the plaintiff's] aid and encouragement of the purchaser's right to obtain … housing." *Id.* at 721–22. So also here. Defendants' discrimination interfered with the Hertzels' aid and encouragement of other Jews' right to seek housing without discrimination.

Defendants' discriminatory opposition to Jewish religious services likewise interfered with the Hertzels' efforts to aid and encourage the Jewish community in Loggers' Run. Because Orthodox Jews can live only where they can walk to religious services, FAC ¶ 44; *LeBlanc-*

*Sternberg*, 67 F.3d at 417, Defendants were able to make a concentrated effort to slow the rate of growth of the Jewish community through their campaign to snuff out Jewish religious services.

Finally, Defendants' entire course of discriminatory conduct—from the harassment, to rules enforcement, to the denial of community benefits, to the hostile environment—constitutes unlawful retaliation for the Hertzels' attempts to build a synagogue and otherwise grow the Jewish community in Loggers' Run. "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux*, 598 F. App'x at 644. The Hertzels' pro-Jewish efforts constitute protected activity, *see, e.g.*, *Sofarelli*, 931 F.2d 722, and the campaign of discrimination constitutes adverse action, *see, e.g.*, *Cano v. 245 C&C, LLC*, 2019 WL 11769102, at *23 (S.D. Fla. 2019) (threat of $150.00 fine constituted "adverse action"). Finally, the extensive pleadings regarding animus and the fact that the harassment began with the synagogue proposal supports a causal inference of retaliation.

**2.** Defendants simply rehash their hostile-housing-environment objections, so their arguments are not responsive to the bulk of the Hertzels' interference and retaliation claims, which are far broader. Even focusing on the limited subset they do challenge, their arguments are meritless. Defendants first contend that the conduct was not sufficiently severe to be actionable. *See* MTD 29–30. But they provide no analysis to support this assertion, which a wealth of precedent contradicts. *See, e.g.*, *Sofarelli*, 931 F.2d at 720–23. And even if Defendants did have a valid "severity" argument, it would at most relate only to "interference" under § 3617 and § 760.37, not intimidation and retaliation. *See Philippeaux*, 598 F. App'x at 644.

Defendants separately re-argue that Hertzels failed to allege that they "reported" any harassment to Defendants. But the Complaint alleges Defendants *participated in* the harassment.

It also alleges that they knew about the harassment because they encouraged it and stymied the Hertzels' attempts to mitigate tensions. *See, e.g.*, FAC ¶¶ 105–111.[10] Finally, Defendants continue to press their unserious argument that the Complaint fails to allege animus.[11] It remains meritless.

### F.    Land-Use and Permitting Discrimination (Count IX)

The FFHA makes it "unlawful to discriminate in land use decisions or in the permitting of development based on race" or "religion." Fla. Stat. § 760.26. When interpreting this provision, its text should be read in its "plain, obvious, and common sense." *Ham v. Portfolio Rec. Assocs.*, 308 So. 3d 942, 946–47 (Fla. 2020) (quoting A. Scalia & B. Garner, Reading Law 56 (2012)). The text of § 760.26 encompasses an HOA's rules related to property use and development, as well as its enforcement of those rules. Both are "decisions" about the "type of activity for which a piece of real property, including a building or structure on land, is designed and intended, or the purpose for which it is occupied or maintained." *Land Use*, Black's Law Dictionary (12th ed. 2024); *see, e.g.*, *Evergreen Cmts., Inc. v. Palafox Pres. HOA*, 213 So. 3d 1127, 1128 (Fla. Dist. Ct. App. 2017) (noting that a declaration of covenants is a "land use restriction"); *Sun Harbor HOA v. Bonura*,

---

[10] Defendants argue that they are not responsible for damage to the Chabad storefront because it is purportedly "owned and managed by a third-party company." MTD 31. The HOA's ability to regulate that owner is not discussed in the Complaint. Regardless, "an action brought for compensation by a victim of housing discrimination is, in effect, a tort action," *Meyer v. Holley*, 537 U.S. 280, 285 (2003), and tortfeasors are "responsible for the natural and foreseeable consequences of their actions," *Bailey v. Swindell*, 89 F.4th 1324, 1332 n.6 (11th Cir. 2024); *Nason v. Shafranski*, 33 So. 3d 117, 120 (Fla. Dist. Ct. App. 2010). It is certainly plausible that the damage was foreseeable based on Defendants' encouragement of it.

[11] Defendants' claim that this case is "synonymous" with *Gurevitch v. Emerald Green POA*, 2025 WL 642347 (S.D.N.Y. 2025), is absurd. That case held that "isolated stray remarks" could not prove animus, but qualified (1) that there was "no indication that the maker(s) of the discriminatory remark had anything to do with the … actions Plaintiffs challenge," (2) that "Defendants did not charge non-Jewish residents for similar structures on or alterations to their property" to those for which they cited plaintiffs; and (3) that Defendants did not claim "meetings were purposely scheduled for when Plaintiffs could not attend." *Id.* at *9–10. The Hertzels allege *these exact facts*. *See* FAC ¶¶ 55, 70, 87, 97, 110.

2010 WL 10879109, at *1 (Fla. Cir. Ct. 2010) (holding that an HOA violated § 760.26 through restrictions on dogs), *rev'd on other grounds*, 95 So. 3d 262 (Fla. Dist. Ct. App. 2012). The statute's enacted purposes confirm this reading. *See* Neighborhood Revitalization Act, 2000 Fla. Laws 3859, 3861 (seeking to revitalize neighborhoods through "mixed-use" facilities in common areas); *see also* Reading Law, *supra*, at 217.

The Hertzels have alleged violations of § 760.26 based on the HOA's application of its rules and the HOA's rules themselves. At the pleading stage, the foregoing discussion of the Hertzels' other FFHA claims is more than sufficient to state a claim under § 760.26. First, the Hertzels have plausibly alleged enforcement-based violations because Defendants discriminated in how they enforced land-use restrictions, including in the events the Hertzels could host, in how they could design their property, and in how they could use common areas. *See, e.g.*, FAC ¶¶ 82–91, 95–99.  Second, the Hertzels have plausibly alleged that the Declaration and Rules are facially discriminatory by precluding religious uses of common areas and homes while permitting comparable secular activities. FAC ¶¶ 185–190. As discussed, these provisions plainly constitute "discrimination" based on religion under the ordinary meaning of that term. *See supra* at 15–19.

*     *     *

At bottom, the Hertzels have alleged a sustained and multifaceted campaign of discrimination and retaliation that falls squarely within the ambit of the statutes they invoke for protection, each of which has a broad and sweeping reach in its own right. Unsurprisingly, then, none of Defendants' pleading-stage arguments have merit. The motion should be denied.

## **CONCLUSION**

The Court should deny Defendants' Motion to Dismiss.

Dated May 29, 2025                         Respectfully submitted,


                                           /s/ *Eliot Pedrosa*
John C. Brinkerhoff Jr. (*pro hac vice*)   Eliot Pedrosa (FL Bar No. 182443)
JONES DAY                                  Priscilla Ruiz (FL Bar No. 1049927)
51 Louisiana Avenue, N.W.                  JONES DAY
Washington, DC 20001-2113                  600 Brickell Avenue, Suite 3300
Tel: (202) 879-3939                        Miami, FL 33131
*jbrinkerhoff@jonesday.com*                Tel: (305) 714-9717
                                           *epedrosa@jonesday.com*


Jason Gonzalez (FL Bar No. 146854)         David J. Hacker (*pro hac vice*)
Bob Minchin (FL Bar No. 1033022)           Jeremiah G. Dys (*pro hac vice*)
LAWSON HUCK GONZALEZ                        FIRST LIBERTY INSTITUTE
215 South Monroe Street, Suite 320         2001 West Plano Parkway, Suite 1600
Tallahassee, FL 32301                      Plano, TX 75075
Tel: (850) 825-4334                        Tel: (972) 941-4444
*Jason@lawsonhuckgonzalez.com*             *dhacker@firstliberty.org*


*Counsel for Plaintiffs*

-26-

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this May 29, 2025, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

*/s/ Eliot Pedrosa*
Eliot Pedrosa