UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:24-cv-80640- CANNON

RABBI NAFTALY HERTZEL,
HENYA HERTZEL, and CHABAD
ISRAELI CENTER, INC., a Florida not-
for-profit corporation,

      Plaintiffs,

v.

LOGGERS' RUN, INC., CAMPBELL
PROPERTY MANAGEMENT AND
REAL ESTATE, INC., RONALD HARP,
and HARRY DIETZ,

      Defendants.

## DEFENDANT LOGGERS' RUN'S RESPONSE TO FIRST SET OF INTERROGATORIES

**COMES NOW**, the Defendant, Loggers' Run, Inc. ("Defendant" "Association" or "Loggers Run"), by and through its undersigned counsel, and hereby submits the following Response to Plaintiffs' First Set of Interrogatories:

1. Describe whether any discussions or communications took place among HOA board members, officers, or employees regarding Plaintiffs, including communications regarding their religion, religious practices, Synagogue proposal, the Chabad House, or the use of property. If so, identify the individuals involved and describe the content of those discussions or communications.

**RESPONSE: The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of relevant evidence and**

includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based on the claims in the First Amended Complaint and facts set forth therein that appear to form the basis of their claims. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with Herzels, just generally. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, Plaintiffs did not become an Owner in the Association until 2017. Additionally, any discussions or communications among HOA board members, officers, or employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege.

Upon information and belief, and to the Defendant's best recollection, Loggers' Run and the Chabad Israeli Center, Inc. met to discuss a Facilities Development Proposal in or around August 15, 2018 presented on behalf of Chabad Israeli Center. Those in attendance on behalf of Loggers' Run included Ron Harp, Ellen Winikoff, Bob Bernhardt, and Attorney Lou Caplan. Those in attendance on behalf of Chabad Israeli Center included Henya Hertzel, Mendy Krinsky, and Attorney Josh Spoont. Mendy Krinsky, on behalf of the Chabad Israeli Center, presented the Facilities Development Proposal to Loggers' Run. RESPONSE TO HERTZEL DISCOVERY – 000755- 000762. Mr. Krinsky indicated that ICC Synagogue's community is growing, with 80-100 families a year and it is looking for a location for expansion. ICC was proposing to build three buildings in two phases:

> Phase 1: Within three years build a Clubhouse for the community approximately 15,000 square feet and a Synagogue of approximately $15,000 square feet.

**Phase 2: In five years or more, building a recreational facility for special needs students. Lifetown type facility was mentioned with a 40 – 45 member staff, it would be non-denominational and encompass "friendship circles". Also mentioned was a goal for being able to handle seminars and events too, approximately 40,000 square feet.**

**During the presentation, ICC was indicated that the Clubhouse would be shared, and ICC believed that the facilities would attract families, create appreciation, and stimulate business. The Association, by and through its General Counsel Lou Caplan had questions about whether ICC intended to buy or lease the land, or wanted to use the land in exchange for a clubhouse. Heritage Park is a passive park and has been designated as a passive park. It was not clear how the synagogue or the school would be zoned, and how that could work when the property is designated as a passive park. Furthermore, the Association, by and through its General Counsel Lou Caplan, shared the Association's history of dealing with other third parties who had expressed an interest in Heritage Park. Over the years, Walgreens had approached the Association more than once to lease the property and/or purchase part of the property for a store. However, the Association has always been firm that the Association is not interested in selling the property, nor leasing the property. Additionally, it is not something the Association's Board of Governors has the authority to agree to, it requires a membership vote. Ron Harp and Ellen Winikoff also inquired about the size of buildings at issue, true timeframe for the project, and loss of "green space". Additionally, during this meeting, Mr. Krensky brought up that a Member of the Board of Governors had resigned and he wanted to be appointed as a member "At Large". The presentation did not strike the Association as well thought out or that much planning had gone into it, there was no existing models in place for the special needs center and it appeared to have just been pulled from the web. It would entail the loss of a valuable asset for the community, a passive park with lots of green space, with little to no benefit to the Association.**

**However, the presentation and proposal was brought up at a Board of Governors Meeting on October 28, 2018. Then President, Ron Harp, asked Mendy Krinsky to speak about the proposal from the Chabad Israeli Center to erect a synagogue, medical facility and a community center in Heritage Park. Mr. Krinsky was permitted to make the presentation about the project and its scope. Homeowners at the meeting expressed concerns about the project, specifics cannot be recalled, nor are they reflected in the minutes. It was also at this meeting that the Board announced that it was not considering moving forward with the project, after a closed legal meeting had occurred. However, the Chabad Israeli Center by and through its representative Mendy Krinsky, was permitted to present the proposal at an open**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**Board of Governors' meeting to all owners in attendance. SEE RESPONSE TO HERTZEL DISCOVERY – 000293-000295.**

**The Association also hosted Town Hall meetings for owners to attend, and allow them to speak about the idea of a Clubhouse or Community Center for Loggers' Run, and even ideas for uses for Heritage Park. At the Town Halls, owners made it clear that they do not want to lose the green space at Heritage Park, did not want commercial use of parks, and did not want a Clubhouse and/or Community Center. See RESPONSE TO HERTZEL DISCOVERY – 000311-000335.**

2. Identify all agents, employees, or others in possession of documents or other evidence related to the Hertzels or who may have interacted with the Hertzels during the relevant period. For each, detail the content of records or substance of interactions.

**RESPONSE: The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with Herzels, just generally in passing. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, the Plaintiffs did not become an Owner in the Association until 2017. The Defendant's official records are maintained at its management office located at 9900-A SW 18th St, in Boca Raton, Florida in accordance with Florida Law. The persons identified below may have interacted with the Hertzels at any time from January 1, 2017 through present.**

- **All current and former Board of Governors, including those identified below from January 1, 2017 to present, may have had interactions with Mr. and/ Mrs. Hertzel at any of the Board of Governors meetings, or Town Hall Meeting(s) should he and/or she have been in attendance, or in and around the community.**
  - **Ronald Harp, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential**

**unit, and present at the August 15, 2018 presentation the Facilities Development Proposal by Chabad Israeli Center attended by Henya Hertzel, and the October 18, 2018 Board Meeting wherein Mendy Krinsky presented the Chabad Israeli Center proposal at an open Board Meeting.**

o **Richard Green, Member of the Board of Governors and Member of the Beautification Committee present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Wayne Baron, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Kimberly Francese, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**

o **Robert Storch, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Jerrold Ziperstein, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Angeles Vera, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**

o **Rachele Volpe, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Maria Matthews, Member of the Board of Governors and Member of the ACC Committee, present at a meeting Henya Hertzel spoke at on November 27, 2017, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**

o **Norman Defusco, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Ben Balser, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **James Robb, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**

o **Robert Lawrence, Member of the Board of Governors,**

- o **Krista Garby, Member of the Board of Governors, present at a meeting Henya Hertzel spoke at on November 27, 2017**
- o **Ellen Winikoff – Member of the Board of Governors and Member of the Beautification Committee, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit, present at the August 15, 2018 presentation the Facilities Development Proposal by Chabad Israeli Center attended by Henya Hertzel, and the October 18, 2018 Board Meeting wherein Mendy Krinsky presented the Chabad Israeli Center proposal at an open Board Meeting**
- o **Richard Zappulla – Member of the Board of Governors and Member of ACC Committee, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**
- o **Adam Linn – Member of the ACC Committee and Beautification Committee**
- o **David Lasdon, Member of the Board of Governors**
- o **Dino Dentale, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit.**
- o **Sandra Lew, Member of the Board of Governors**
- o **Cora Dohler, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit.**
- o **Carol Himes, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit.**
- o **Sandra Lew, Member of the Board of Governors**
- o **Jose Laranjeira, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

- o **Philip Ratner, Member of the Board of Governors and Member of the ACC Committee, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**
- o **Donna Greenberg – Member of the Beautification Committee**
- o **Cathy Chester – Member of the Beautification Committee**
- o **Christin Grey – member of the Grievance Committee**
- o **Allen Piha – Member of the Grievance Committee**
- o **William Badala - Member of the Grievance Committee**
- o **Maria Abella – Member of the Grievance Committee**
- o **Linda June – Member of the Board of Governors**
- o **Andrew Bilukha – Member of the Board of Governors**
- o **Bryan Lidsky - Member of the Board of Governors**
- o **Lawrence Smith – Member of the Board of Governors**
- o **Cora Doehler – Member of the Events Committee**
- o **Jillian Doehler – Member of the Events Committee**
- o **Jessica Pizzaro - Member of the Events Committee**
- o **Monica McGrath - member of the Events Committee**
- **SOS Security employees who patrolled and/or attended Board Meetings through June 2019**
  - o **MJ Manno, SOS Security**
  - o **PJ Jimenez, SOS Security**
  - o **Steve Carbone, Security Supervisor**
  - o **Brian, Burnham, SOS Security**
- **Hawkeye Protective Services employees who patrolled and/or attended Board Meetings from 8/01/2019 to present**
  - o **PJ Jimenez, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**
  - o **Frankie Hammond**
  - o **Bryan Burnham**
  - o **Fabio Sousa**
  - o **James Ambroise, responded to vehicle blocking streets call 5/15/2025**
- **Campbell Property Management Employees who was assigned to and/or attended Board Meetings, and/or Town Halls**
  - o **Ricardo Rubio, Violations Coordinator, Campbell Property Management**
  - o **Cassie Mulholland, Administrative Assistant, Campbell Property Management**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

- o **Erin Skipper, Administrative Assistant, Campbell Property Management**
- o **Ryan Singh, Violations Coordinator, Campbell Property Management**
- o **Robert Bernhardt, Property Manager Campbell Property Management, present at a meeting Henya Hertzel spoke at on November 27, 2017, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit, present at the August 15, 2018 presentation the Facilities Development Proposal by Chabad Israeli Center attended by Henya Hertzel, and the October 18, 2018 Board Meeting wherein Mendy Krinsky presented the Chabad Israeli Center proposal at an open Board Meeting**
- o **Harry Dietz, Assistant Property Manager Campbell Property Management, present at a meeting Henya Hertzel spoke at on November 27, 2017, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**
- o **Fatima Kaiser, Assistant Property Manager, Campbell Property Management, present at a meeting Henya Hertzel spoke at on November 27, 2017, Member of the Board of Governors, present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit**
- o **Evan Bradley, attended an Annual Meeting February 25, 2019, Co-Hosted May 20, 2019 Town Hall Meeting, attended a Board of Governors meeting October 24, 2022,**
- o **Marlene Liebeskind, Campbell Property Management**
- o **Diana Edwards, Administrative Assistant April 2021**
- **Plaintiffs' neighbors and/or other residents of Loggers' Run including but not limited to:**
  - o **Resident of 21860 Reflection Lane, Boca Raton FL reported vehicle blocking streets on 5/15/2025**
  - o **Resident of 11837 Sandlake Dr, Boca Raton FL 33428 reported vehicle blocking streets on 5/15/2025**
  - o **Mendy Krinsky, knowledge regarding presentation and attendance at Board Meetings, member of the ICC**
  - o **Mariangela Sampaio – knowledge regarding violation notices for the property located at 21836 Reflection Lane, Boca Raton, Florida 33428**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

- o **Shalom Levine – knowledge regarding violation notices for the property located at 21812 Reflection Lane, Boca Raton, Florida 33428**
- o **Mikle Levine –knowledge regarding violation notices for the property located at 21812 Reflection Lane, Boca Raton, Florida 33428,**
- o **Sabrina Ortega –  Ms. Ortega is and/or was a tenant of a property in the Association.**

- **Lou Caplan - Sachs, Sax, & Caplan, present at Town Hall Meetings, Annual Meetings, and ICC's presentation in August 2018.**

3. Identify all agents, employees, or others involved in land-use decisions within Loggers' Run and state the nature of each individual's role and whether they were involved in any decisions related to the Hertzels.

**RESPONSE**: **The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based on the claims in the First Amended Complaint. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with Herzels, just generally. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, the Plaintiffs did not become an Owner in the Association until 2017. Additionally, any discussions or communications among HOA board members, officers, or employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege. Further, the Request is vague as to the term "land-use decisions"**

**and what land is being referenced, and use of what land and/or property is the subject of and/or encompassed in that phrase, Further, the Request is vague as to the term "decisions related to the Hertzels" and what decision(s) is being referenced or encompassed by this Request, or context of same.**

**Specifically with regard to January 1, 2017 to present, not including confidential and privileged discussions with Counsel and/or during Mediation, the Defendant's Board of Governors, which changes from time to time based on the election each year, have the ultimate decision making power by and on behalf of the Association; Sachs Sax Caplan the Law Firm that serves as General Counsel for the Defendant, including Lou Caplan, Esq. can provide guidance to the Defendant on the provisions of the Governing Documents and how same may be applied or complied with, and provide recommendations to the Board for consideration; and the Property Manager, Robert H. Bernhardt, LCAM, can provide input and recommendations for the Board to consider. However, it is the Board of Governors who make binding decisions on behalf of the Association, unless such decisions and/or actions to proceed require a vote of the membership. Then the Board of Governors make the initial decision on whether an issue or proposal has owner support. If such interest expressed by the owners is sufficient the amendment to the Declaration and/or proposal for amendments would go out for membership vote. However, if there is not sufficient interest of owners, as gauged by the Board of Governors through Town Halls and/or polls of the owners, then the item is not put out to the membership, and the Board decides not to move forward with the item.**

**Loggers' Run's decisions as to exterior changes to a residence or Lot are governed by Loggers' Run's Architectural Control Committee Guidelines, its Architectural Control Committee (ACC), and its Board of Governors pursuant to the Declaration of Protective Covenants and Restrictions and the Replat Declarations, the Articles of Incorporation, Bylaws of Loggers' Run, Inc., and Rules and Regulations, as they may be amended from time to time. Furthermore, sub-divisions may also have additional restrictions to which owners are subject, including their own respective board of directors and/or architectural control committees in addition to the Loggers' Run's governing body. The ACC was made up of 5 owners who were approved by the Board of Governors to serve on the ACC. It is this committee who approves or denies ACC applications submitted to the Association.**

4. Identify all agents, employees, or others involved in enforcing HOA rules, regulations, and

   covenants and statute the nature of each individual's role.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**RESPONSE: The Defendant's Board of Governors has delegated to management the authority and responsibility to enforce its Governing Documents through violation letters.**

**During Harry Dietz's time as Assistant Property Manager, Harry Dietz would conduct roving patrols around the community, and check for violations. Should a violation be seen during his time roving, the violation would be noted on a tablet which identifies the property address and associated picture taken of the violation. The criteria for violations was laid out in the Association's Governing Documents, including its Rules and Regulations and that formed the basis of the decision of whether there was an apparent violation present or not.**

**If any of the roving security personnel in the community saw parking violations, generally parking on the streets or in other areas where parking is not permitted, trashcans out more than 1 day after pickup, or noticed construction at a residence, the security personnel would communicate the potential violations to management. Only management is tasked with issuing violation letters.**

**Currently, Ryan Singh is the Violations Coordinator tasked with the responsibility of roving around and looking at the properties, including roofs, sidewalks, lawns, driveways, and determinate if violations are present.  The Violations Coordinator is the sale role, with the same responsibilities Mr. Dietz had with a new name.**

**The Grievance Committee is tasked with determining whether to uphold a fine on a property or not if the violation was not corrected after the Stage 2 letter. The Grievance Committee is made up of five independent owners, unrelated to the Board of Governors, who hold a meeting once a month. At least three of the five committee members must be present for the meeting proceed, and a majority vote of a quorum of the committee members controls.**

5.  Describe in Detail the criteria, procedures, or guidelines used by the HOA for issuing warnings, citations, or violations to landowners or residents, including any differences in criteria applied to Plaintiffs compared to other residents.

**RESPONSE: The criteria for violations are laid out in the Association's Governing Documents, including its Rules and Regulations, as amended from time to time, and that formed the basis of the decision of whether there was an apparent violation present or not. RESPONSE TO HERTZEL DISCOVERY – 000001 – 000138.**

> **Furthermore, see the Grievance Panel Guidelines dated December 19, 2019, bates numbered: RESPONSE TO HERTZEL DISCOVERY – 000780 – 000783.**
>
> **If a violation is seen while the Violations Coordinator is roving around the community looking at properties, then a Stage 1 letter, also referred to as a courtesy letter, is sent out. The Stage 1 letter provides 30 days for the violation to be corrected, and requests that the violation be corrected. If not, a Stage 2 letter is sent indicating that the violation still exists and it must be corrected, if the violation is not corrected, then it will go before the Grievance Committee during its monthly meeting to decide whether the violation still exists and if so, to fine the property. Should a violation want to be disputed the owner or his/her/their representative can go before the Grievance Committee, and if counsel is to appear as the representative, the Association requests notice of same prior to appearance at the meeting and the Association's General Counsel may be requested to attend or get involved as well.**
>
> **There is no and was no difference in criteria applied to properties owned by the Plaintiff, Chabad Israeli Center, Inc., as compared to other homeowners. Violations are issued to and stay with the property and are not issued to residents.**

6. Describe in Detail any training provided to employees, agents, or representatives of You concerning the enforcement of HOA rules, including the issuance of citations and handling of requests or complaints related to religious practices.

   **RESPONSE: The Defendant is not required by and/or mandated by Federal or Florida law to provide fair housing act training. The Defendant has contracted with Campbell Property Management to provide licensed Community Association Manager(s) to assist with the day to day operations of the Association, including issuing violations. The Defendant's Board of Governors has delegated to management, including its Property Manager and Violations Coordinator, the authority and responsibility to enforce its Governing Documents through violation letters.**

7. Identify all individuals involved in the decision-making process for issuing warnings, citations, or violations to Plaintiffs, including their roles, responsibilities, and the dates of their involvement.

   **RESPONSE: Please see the Response to Interrogatory 4.**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

8.  Identify all warnings, citations, or violations issued by You to Plaintiffs, including the date,

nature of the alleged violation, and the basis for each citation.

**RESPONSE: Upon information and belief, neither Rabbi Naftaly Hertzel nor Henya Hertzel were issued warnings, citations, or warnings from the Association, as warnings, citations, and/or violations are issued for the property and not the occupants. Such warnings, citations, and/or warnings are issued to the property and would be sent to the registered Owner of the home. Chabad Israeli Center, Inc. received warning(s), citation(s) and/or violation(s) related to homes it owns in Loggers' Run. Please see the Community Compliance Report for 21812 Reflection Lane and 21813 Reflection Lane, RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694, 000443-000644; 000814; 000917; 000926; 001080; 000125; 001146; 001188; 017578 – 017583; 010448 – 010505; 010506-010544; 023191-023227.**

9.  Describe the process You follow when a resident disputes or challenges a warning, citation

or violation, and identify any such disputes raised by Plaintiffs.

**RESPONSE: The Defendant does not have any specific process it follows when an Owner disputes or challenges a warning, citation or violation, as it does not mandate that an Owner has to comply with a specific process for same. Generally, an Owner may go to the Grievance Committee meeting to dispute the violation, or he/she/they can bring it up at a Board of Governors meeting.**

10. Identify any residents who have been issued citations or violations for similar conduct or

rule violations as Plaintiffs within the past six years and specify the outcome of those

citations.

**RESPONSE: Please see the Community Compliance Reports produced in Response to Plaintiffs' First Set of Requests for Production of Documents, bates numbered RESPONSE TO HERTZEL DISCOVERY – 000645 – 000742; 000796-001215; 001216-023190.**

11. Identify all communications between You and members of the HOA board, residents, or

other third parties regarding the issuance of warnings, citations or violations to Plaintiffs.

**RESPONSE: The Defendant objects to this Request on the basis of attorney client and work-product privilege as any discussions or communications among HOA board**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**members, officers, or employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege. The Defendant produced documents responsive to the Request from January 1, 2017 to present in response to Plaintiffs' First Set of Requests for Production of Documents and would refer to such documents, including the Community Compliance Report for 21812 Reflection Lane and 21813 Reflection Lane, RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694. Furthermore, please see RESPONSE TO HERTZEL DISCOVERY – 000000443 – 000644; RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694; RESPONSE TO HERTZEL DISCOVERY - 000770-000774; 000754 and IMG_4934.MOV; 000743 – 000747.**

12. Describe the process, including any applications, votes, proposals, or approvals, for allowing or denying the construction of nonresidential building, including places of worship, anywhere within the Loggers' Run community.  Include details on whether any exceptions, waivers, or accommodations have been granted for nonresidential buildings in the past.

    **RESPONSE: The Defendant has not approved the construction of nonresidential buildings.**

13. Identify all requests or applications submitted by Plaintiffs or any other individuals or entities regarding the long term use by non-residents or property owners, construction, establishment of facilities in recreational or other shared spaces within the HOA community.  In your response, describe Your role in reviewing, recommending, approving, or denying such requests.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**RESPONSE: Mendy Krinsky on behalf of the Plaintiff, Chabad Israeli Center, Inc., presented a Facilities Development Proposal in or around August 15, 2018 to the Association at a meeting held at its General Counsel's office in Boca Raton. RESPONSE TO HERTZEL DISCOVERY – 000755- 000762.**

**In or around 2020, a Developer, John Marky, made a proposal for recreational land of the Association's and made a monetary offer of approximately $800,000 for same. The Association decided not to proceed with his proposal as it wanted to keep its park and green space as is.**

**In or around 2021, a Developer, Toll Brothers, made a proposal to purchase 25 acres of recreational property at a meeting with the Association, represented by the Association's General Counsel, Property Manager and Executive Committee Members. The offer was for approximately $250,000 / acre, which the Association proceeded not to go forward with as it wants to keep its parks and green space as is.**

**Additionally, such a sale of property for any of the foregoing proposals requires an ownership vote.**

14. State the reasons why Plaintiffs' request to build a house of worship was denied, delayed or ignored, including all criteria considered and the individuals or entities involved in making the decision.

**RESPONSE: The Winding Lakes Section 2, R-1 parcel, Heritage Park, is subject to restrictions recorded in the Public Records of Palm Beach County, which designate it as a "Recreation Area" subject to perpetual maintenance by the Defendant and limited to recreational purposes only. *See* Declaration, OR BK 2793, PG 1, in the Public Records of Palm Beach County, Florida; *see also* OR, Plat BK 42, 102.**

**The Declaration further defines "Recreation Areas" throughout the community that are specifically intended for <u>recreational purposes only</u>. *See* ECF No. 37, Ex. G., Declaration, Article III, A. 2. "Recreation Area" means Committed Property outside the Lots and dedicated as a Recreation Area in the Declaration. *Id.* at Art. I, 16. "Recreational Purposes" includes parks, baseball and other athletic fields, playgrounds, jogging and bicycle paths, open space, swimming pools, picnic areas, and clubhouses. *Id.* The Recreation Areas are for the sole and exclusive use of the Defendant's Owners, residents and their guests. The Declaration further provides that no Commercial Areas shall be established nor maintained on any Residential**

**Property or in any Recreation Area.** *Id.* **at Article III, A. 3. "Commercial Areas" are defined as use for commercial, business, school, church, or office uses or any other commercial or public and semi-public facilities.** *Id.* **at Article I, 17. However, no such Commercial Areas were established in the Association.**

**The Association's Governing Documents expressly prohibit any commercial, religious, or institutional use, including Churches or Synagogues, within Recreation Areas or Residential Properties. Per the Defendant's Governing Documents, allowing commercial use of the Winding Lakes Section 2, R-1 parcel requires a Unit Owner vote to amend the Declaration to permit such use.**

**When the Plaintiffs requested permission to construct a synagogue at the Winding Lakes Section 2, R-1 parcel, an undeveloped Recreation Area, they were informed that such a use would require a community-wide amendment to the Declaration and such an amendment requires the consent of at least two-thirds of the over 1,206 Owners, before the Defendant could, potentially, allow commercial use of the Winding Lakes Section 2, R-1 parcel. Over the years, other Owners, Pharmacy Chains such as Walgreens, and Developers, have approached the Association with proposals for this property. See Board of Governors and Annual Meeting Minutes produced in response to First Request for Production. All of the foregoing proposals failed, and the Association never formally presented them to Unit Owners, just like the Plaintiffs. The Association's Board of Governors over the years has held town hall meetings to gather input from the over 1,800 Unit Owners regarding whether either a Clubhouse or other community structure was of interest to the community. Strong opposition to the aforementioned suggested changes to the Winding Lakes Section 2, R-1 parcel was stated by the Owners throughout the community. The Loggers' Run Owners do not have an interest in construction, use or maintenance of a Clubhouse for Loggers' Run itself. Therefore, none of the proposed changes to the Winding Lakes Section 2, R-1 parcel have ever been pursued.  The Defendant did not want to lose valuable green space if Heritage Park is sold or gifted to Chabad Israeli Center, there is a potential increase in traffic if Heritage Park is sold for a commercial use, and lack of interest from Loggers' Run owners to want to pay for and maintain a Clubhouse, or even use a Clubhouse. The owners in the Association did not want to lose the green space, nor sell the property. The Association hosted Town Hall meetings made it clear that they do not want to lose the green space at Heritage Park and did not want a Clubhouse and/or Community Center.**

Case 9:24-cv-80640-AMC   Document 76-1   Entered on FLSD Docket 01/21/2026   Page 17 of 21

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

15. State whether You have issued citations or denied proposals for other residents or entities based on religious practices, and, if so, describe each instance, including the date, nature of the action taken, and the outcome.

**RESPONSE: The Association does not make decisions based on religion.**

16. State whether the HOA has received any complaints or objections from residents concerning Plaintiffs' religious practices, proposed Synagogue, or Chabad House. If so, identify the complaints and describe the nature of the complaints.

**RESPONSE: Yes, the Defendant has received complaints concerning 21812 Reflection Lane and 21813 Reflection Lane while Chabad Israeli Center, Inc. was the registered owner of the properties. Please see: the Community Compliance Report for 21812 Reflection Lane and 21813 Reflection Lane, RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694; RESPONSE TO HERTZEL DISCOVERY - 000770-000774; 000754 and IMG_4934.MOV; 000743 – 000747. Neighbors brought an Ad to the attention of the Association the Plaintiff Chabad Israeli Center, Inc.'s intended alterations and use of 21813 Reflection Lane for nonresidential purposes. RESPONSE TO HERTZEL DISCOVERY – 000784-000786. Furthermore, at Town Hall meetings owners made it clear during the Town Hall clear they did not want to sell or develop Heritage Park, wanted to keep it as is; and there was a lack of interest in commercial use of the parks. Furthermore, owner(s) submitted suggestion slip(s) that indicated an intent to keep the Heritage Park green. RESPONSE TO HERTZEL DISCOVERY 000313 – 000315. In fact, at a Town Hall specifically to determine whether there was interest to construct a Clubhouse at Heritage Park, out of 80 owners who showed up, 65 opposed a clubhouse on any recreation area in the Association. RESPONSE TO HERTZEL DISCOVERY 000332 – 000335; Neighbors complain about numerous vehicles parking at and around 21812 Reflection Lane on the street, sidewalks, and grassy areas, fires in the backyard, and Owners not wanting to lose valuable green space if Heritage Park is sold or gifted to Chabad Israeli Center. Many of the complaints were conveyed verbally.**

17. Identify any reported or communicated interactions between Loggers' Run residents concerning Plaintiffs' religious practices, proposed Synagogue, or Chabad House. In your

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

response, identify the parties who disclosed the interactions and the contents of the disclosures.

**RESPONSE: Please see Response to Interrogatory 16.**

18. Describe any training, policies, or guidelines provided to HOA board members, officers, or employees regarding religious discrimination, the Fair Housing Act, or other anti-discrimination laws applicable to the HOA.

**RESPONSE: The Defendant is not required and/or mandated by Federal or Florida law to provide fair housing training, policies or guidelines to its Board of Governors or employees. The Defendant's Board of Governors are in compliance with certification and education requirements of Florida Law, including § 720.3033, as amended from time to time.**

19. Identify any complaints or grievances filed against You alleging religious or racial discrimination, including the date, nature of the complaint, and its resolution.

**RESPONSE: The Defendant objects to this Request as overbroad as to scope and time and not reasonably calculated to lead to the discovery of evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case, nor tailored to housing issues or issues raised by Owners. The "relevant period" of this Interrogatory is from January 1, 2012 through present, and such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to non-parties that have no bearing and/or relation to the allegations in the First Amended Complaint. Furthermore, the Plaintiffs did not become an Owner in the Association until 2017. To the best of the Defendant's recollection, none.**

20. Identify all documents, communications or other records in the HOA's possession related to Plaintiffs, including their religious practices, the issuance of warnings, citations, or violations to Plaintiffs, the Chabad House, or the denial of Plaintiffs' request to build a synagogue.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**RESPONSE: The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based on the claims in the First Amended Complaint and facts set forth therein that appear to form the basis of their claims. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with Herzels, just generally. Such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, the Plaintiffs did not become an Owner in the Association until 2017. Additionally, any discussions or communications among HOA board members, officers, or employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege. Without waiving the foregoing objections, please see all documents produced in response to Plaintiffs' First Set of Requests for Production of Documents, including those bates numbered RESPONSE TO HERTZEL DISCOVERY – 000001 – 023452; IMG_4934.MOV; CALL_FOR_SERVICE_05-14-2024_20.15.42.0_-_1050_-_HQC22- Phone_Voice_7240501.WAV; which encompasses files on each home owned by the Plaintiff, Chabad Israeli Center in Loggers' Run.**

Dated January 9, 2026                    Respectfully submitted,

                                    _/s/  Ashley N. Landrum_
                                    ASHLEY N. LANDRUM, ESQ.
                                    Florida Bar No. 111594
                                    VERNIS & BOWLING OF PALM BEACH, P.A.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

*Counsel for Defendants*
618 U.S. Highway One, Suite 200
North Palm Beach, Florida 33408
Telephone No. 561.775.9822
Facsimile No. 561.775.9821
Primary:      alandrum@florida-law.com
Secondary:   kpaxton@florida-law.com
                    pbfiling@florida-law.com


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 9, 2025, I electronically filed the foregoing documents with the Clerk of Court using CM/ECF, if permitted.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronically Filing generated by CM/ECF or in some other authorized manner for those Counsel or Parties who are not authorized to receive electronically Notice of Electronic Filing.

   **/s/  Ashley N. Landrum**
ASHLEY N. LANDRUM, ESQ.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

## SERVICE LIST

JONES DAY
*Counsel for Plaintiffs*
600 Brickell Ave., Ste 3300
Miami, FL 33131
Telephone: (305) 7149714
epedrosa@jonesday.com
jbrinkerhoff@jonesday.com
Pruiz@jonesday.com

FIRST LIBERTY INSTITUTE
*Counsel for Plaintiffs*
1331 Pennsylvania Ave. NW Ste 1410
Washington, DC 20004
Telephone: (202) 921-4105
2001 W Plano Parkway Ste 1600
Plano, TX 75075
Telephone: (972) 941-4444
cvarone@firstliberty.org
jdys@firstliberty.org
dhacker@firstliberty.org

LAWSON HUCK GONZALES
*Counsel for Plaintiffs*
215 S Monroe St. Ste 320
Tallahassee, FL 32301
Telephone: (850) 825-4334
jason@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com