**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
Case No. 9:24-cv-80640- CANNON

**RABBI NAFTALY HERTZEL,**
**HENYA HERTZEL, and CHABAD**
**ISRAELI CENTER, INC.,** a Florida not-
for-profit corporation,

      Plaintiffs,

v.

**LOGGERS' RUN, INC., CAMPBELL**
**PROPERTY MANAGEMENT AND**
**REAL ESTATE, INC., RONALD HARP,**
**and HARRY DIETZ,**

      Defendants.

**DEFENDANT CAMPBELL'S RESPONSE TO FIRST SET OF INTERROGATORIES**

      **COMES NOW**, the Defendant, CAMPBELL PROPERTY MANAGEMENT AND REAL ESTATE, INC. ("Defendant"), by and through its undersigned counsel, and hereby submits the following Response to Plaintiffs' First Set of Interrogatories:

1. Describe your contractual relationship with the HOA and the scope of your role in managing the Loggers' Run Community, including your obligations, duties, authority, and rights.

   **RESPONSE: The Defendant has entered into a Management Agreement with the Association to provide management and administration of the Association's common areas as required by the Association's Governing Documents, and the Defendant's scope of services are as laid out in the agreement. See Management Agreement produced hereto RESPONSE TO HERTZEL DISCOVERY – 023462 - 023475**.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

2. Identify all employees or agents of You that have any involvement with Loggers' Run or the Hertzels in their capacity as your employee or agent, that could be in possession of documents or other evidence related to matters to be shown at trial, or that have personal knowledge of matters to be shown at trial. For each employee, list the subject matter of their involvement, documents, or knowledge.

**RESPONSE: The Defendant's employees who were assigned to Loggers' Run and/or attended Board Meetings, and/or "Town Halls" include:**

  a. **Ricardo Rubio, former Violations Coordinator,**
  b. **Cassie Mulholland, former Administrative Assistant: present at Board of Governors meetings**
  c. **Erin Skipper, former Administrative Assistant: present at Board of Governors meetings**
  d. **Ryan Singh, Violations Coordinator: do not believe he ever had any interaction with Plaintiffs Hertzel.**
  e. **Robert Bernhardt, Property Manager: present at a meeting Henya Hertzel spoke at on November 27, 2017; present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit; present at the August 15, 2018 presentation of the Facilities Development Proposal by Chabad Israeli Center attended by Henya Hertzel, and the October 18, 2018 Board Meeting wherein Mendy Krinsky presented the Chabad Israeli Center proposal at an open Board Meeting; further, Plaintiffs Hertzel have contacted him for assistance and favors.**
  f. **Harry Dietz, former Assistant Property Manager: present at a meeting Henya Hertzel spoke at on November 27, 2017; present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going through renovations to be allegedly used for purposes other than a residential unit.**
  g. **Fatima Kaiser, Assistant Property Manager: present at a meeting Henya Hertzel spoke at on November 27, 2017; present at Board meeting on September 27, 2021 wherein group of homeowners from Winding Lakes II expressed their concerns about a property recently purchased and going**

       **through renovations to be allegedly used for purposes other than a residential unit**

   h. **Evan Bradley: attended an Annual Meeting February 25, 2019; attended May 20, 2019 Town Hall Meeting; attended a Board of Governors meeting on October 24, 2022,**

   i. **Marlene Liebeskind:– attended Board of Governors meetings**

   j. **Diana Edwards, Administrative Assistant April 2021: attended Board of Governors meetings**

3. Describe whether any discussions or communications took place between You and Defendants regarding Plaintiffs, including communications regarding their religion, religious practices, Synagogue proposal, Chabad House uses, or use of residential property. If so, identify the individuals involved and describe the content of those discussions or communications.

   **RESPONSE: The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based on the claims in the First Amended Complaint and facts set forth therein that appear to form the basis of their claims. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with the Hertzels, just generally. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017. Additionally, any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and**

the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege.

Upon information and belief, and to the Defendant's best recollection, Loggers' Run and the Chabad Israeli Center, Inc. met to discuss a Facilities Development Proposal in or around August 15, 2018 presented on behalf of Chabad Israeli Center. Those in attendance on behalf of Loggers' Run included Ron Harp, Ellen Winikoff, Bob Bernhardt, and Attorney Lou Caplan. Those in attendance on behalf of Chabad Israeli Center included Henya Hertzel, Mendy Krinsky, and Attorney Josh Spoont. Mendy Krinsky, on behalf of the Chabad Israeli Center, presented the Facilities Development Proposal to Loggers' Run. RESPONSE TO HERTZEL DISCOVERY – 000755- 000762. Bob Bernhardt is an employee of the Defendant. Mr. Krinsky indicated that ICC Synagogue's community is growing, with 80-100 families a year and it is looking for a location for expansion. ICC was proposing to build three buildings in two phases:

Phase 1: Within three years build a Clubhouse for the community approximately 15,000 square feet and a Synagogue of approximately $15,000 square feet.
Phase 2: In five years or more, building a recreational facility for special needs students. Lifetown type facility was mentioned with a 40 – 45 member staff, it would be non-denominational and encompass "friendship circles". Also mentioned was a goal for being able to handle seminars and events too, approximately 40,000 square feet.

During the presentation, ICC indicated that the Clubhouse would be shared, and ICC believed that the facilities would attract families, create appreciation, and stimulate business. The Association, by and through its General Counsel Lou Caplan had questions about whether ICC intended to buy or lease the land or wanted to use the land in exchange for a clubhouse. Heritage Park is a passive park and has been designated as a passive park. It was not clear how the synagogue or the school would be zoned, and how that could work when the property is designated as a passive park. Furthermore, the Association, by and through its General Counsel Lou Caplan, shared the Association's history of dealing with other third parties who had expressed an interest in Heritage Park. Over the years, Walgreens had approached the Association more than once to lease the property and/or purchase part of the property for a store. However, the Association has always been firm that the Association is not

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**interested in selling the property, nor leasing the property. Additionally, it is not something the Association's Board of Governors has the authority to agree to, it requires a membership vote. Ron Harp and Ellen Winikoff also inquired about the size of buildings at issue, true timeframe for the project, and loss of "green space". Additionally, during this meeting, Mr. Krensky brought up that a Member of the Board of Governors had resigned and he wanted to be appointed as a member "At Large". The presentation did not strike the Association as well thought out or that much planning had gone into it, there was no existing models in place for the special needs center, and it appeared to have just been pulled from the web. It would entail the loss of a valuable asset for the community, a passive park with lots of green space, with little to no benefit to the Association.**

**However, the presentation and proposal was brought up at a Board of Governors Meeting on October 28, 2018. Then President, Ron Harp, asked Mendy Krinsky to speak about the proposal from the Chabad Israeli Center to erect a synagogue, medical facility and a community center in Heritage Park. Mr. Krinsky was permitted to make the presentation about the project and its scope. Homeowners at the meeting expressed concerns about the project, specifics cannot be recalled, nor are they reflected in the minutes. It was also at this meeting that the Board announced that it was not considering moving forward with the project, after a closed legal meeting had occurred. However, the Chabad Israeli Center by and through its representative Mendy Krinsky, was permitted to present the proposal at an open Board of Governors' meeting to all owners in attendance. SEE RESPONSE TO HERTZEL DISCOVERY – 000293-000295. Bob Bernhardt, Harry Dietz, and Fatima Kaiser, employees of the Defendant, were present at the meeting.**

**The Association also hosted Town Hall meetings for owners to attend and allow them to speak about the idea of a Clubhouse or Community Center for Loggers' Run, and even ideas for uses for Heritage Park. At the Town Halls, owners made it clear that they do not want to lose the green space at Heritage Park, did not want commercial use of parks, and did not want a Clubhouse and/or Community Center. See RESPONSE TO HERTZEL DISCOVERY – 000311-000335.**

4. Describe any communications that You, your employees, or your agents had with

   Plaintiffs.

   **RESPONSE: The Defendant objects to this Request as overbroad, as to scope and time, and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to**

Page 5

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based on the claims in the First Amended Complaint and facts set forth therein that appear to form the basis of their claims. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with the Hertzels, just generally. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017. Without waiving the foregoing objections, please see communications with Plaintiffs from January 1, 2017 to present produced in response to Requests for Production.**

5. Describe in Detail the criteria, procedures, or guidelines used by you, your agents, or the HOA for issuing warnings, citations, or violations to Loggers' Run residents, including any differences in criteria applied to Plaintiffs compared to other residents.

    **RESPONSE: The criteria for violations are laid out in the Association's Governing Documents, including its Rules and Regulations, as amended from time to time. RESPONSE TO HERTZEL DISCOVERY – 000001 – 000138. Furthermore, see the Grievance Panel Guidelines dated December 19, 2019, bates numbered: RESPONSE TO HERTZEL DISCOVERY – 000780 – 000783, and documents bates numbered: RESPONSE TO HERTZEL DISCOVERY – 023228 – 023351.**

    **If a violation is seen while the Violations Coordinator is roving around the community looking at properties, then a Stage 1 letter, also referred to as a courtesy letter, is sent out. The Stage 1 letter provides 30 days for the violation to be corrected, and requests that the violation be corrected. If not, a Stage 2 letter is sent indicating that the violation still exists and it must be corrected, if the violation is not corrected, then it will go before the Grievance Committee during its monthly meeting to decide whether the violation still exists and if so, to fine the property. Should a violation want to be disputed, the owner or his/her/their representative can go before the Grievance Committee, and if counsel is to appear as the representative, the Association requests notice of same prior to appearance at the meeting and the Association's General Counsel may be requested to attend or get involved as well.**

Page 6

**There is no and was no difference in criteria applied to properties owned by the Plaintiff, Chabad Israeli Center, Inc., as compared to other homeowners. Violations are issued to and stay with the property and are not issued to residents.**

6. Describe in Detail any training provided to employees, agents, or representatives of You concerning the enforcement of HOA rules, including the issuance of citations and handling of requests or complaints related to religious practices.

    **RESPONSE: The Defendant is not required by and/or mandated by Federal or Florida law to provide training on enforcement of the Association's governing documents. Licensed Community Association Managers employed by the Defendant complete state mandated educational requirements and an examination based on knowledge of state and federal laws and complete the state mandated hours of continuing education. From time to time, the Defendant will provide updates and webinars on changes in Florida Law to its property managers on a number of subjects.**

7. Identify all individuals involved in the decision-making process for issuing citations or violations to Plaintiffs, including their roles, responsibilities and the dates of their involvement.

    **RESPONSE: Please see Response to Interrogatory 5.**

8. Identify all citations or violations issued by You to Plaintiffs, including the date, nature of the alleged violation, and the basis for each citation.

    **RESPONSE: Upon information and belief, neither Rabbi Naftaly Hertzel nor Henya Hertzel were issued warnings, citations, or violations from the Association, as warnings, citations, and/or violations are issued for the property and not the occupants. Such warnings, citations, and/or violations are issued to the property and would be sent to the registered Owner of the home. Chabad Israeli Center, Inc. received warning(s), citation(s) and/or violation(s) related to homes it owns in Loggers' Run. Please see the Community Compliance Report for 21812 Reflection Lane and 21813 Reflection Lane, RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694, and documents bates numbered: RESPONSE TO HERTZEL DISCOVERY 000814; 000917; 000926; 001080; 000125; 001146; 001188; 017578 – 017583; 010448 – 010505; 010506-010544; 023191-023227.**

9. Explain the reasons for each citation or violation issued to Plaintiffs, including the specific rule or regulation allegedly violated and the basis for the determination that Plaintiffs were in violation.

   **RESPONSE: Please see Response to Interrogatory 8.**

10. Describe the process You follow when a resident disputes or challenges a citation or violation, and identify any such disputes raised by Plaintiffs.

    **RESPONSE: The Defendant would follow any process established by the Association. The Association does not have any specific process it follows when an Owner disputes or challenges a warning, citation or violation, as it does not mandate that an Owner has to comply with a specific process for same. Generally, an Owner may go to the Grievance Committee meeting to dispute the violation, or he/she/they can bring it up at a Board of Governors meeting.**

11. Identify any residents who have been issued citations or violations for similar conduct or rule violations as Plaintiffs within the past twelve years and specify the outcome of those citations.

    **RESPONSE: Please see the Community Compliance Reports produced in Response to Plaintiffs' First Set of Requests for Production of Documents, bates numbered RESPONSE TO HERTZEL DISCOVERY – 000645 – 000742, and documents bates numbered: RESPONSE TO HERTZEL DISCOVERY  000796-001215; 001216 - 023190.**

12. Identify all communications between You and members of the HOA board, residents, or other third parties regarding the issuance of citations or violations to Plaintiffs.

    **RESPONSE: The Defendant objects to this Request as to overbroad, as to scope and time, and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based**

on the claims in the First Amended Complaint and facts set forth therein that appear to form the basis of their claims. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with the Hertzels, just generally. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017. Additionally, any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege. Without waiving the foregoing objections, please see identified communications from January 1, 2017 to present contained in the following: Community Compliance Report for 21812 Reflection Lane and 21813 Reflection Lane, RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694. Furthermore, please see RESPONSE TO HERTZEL DISCOVERY – 000000443 – 000644; RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694; RESPONSE TO HERTZEL DISCOVERY - 000770-000774; 000754 and IMG_4934.MOV; 000743 – 000747; 000784-000786; 000787-000788.

13. Describe any involvement or input from the HOA board in the decision-making process for issuing warnings, citations, or violations to Plaintiffs, including any direction, instruction, or recommendations provided to You.

   RESPONSE: **The criteria for violations are laid out in the Association's Governing Documents, including its Rules and Regulations, as amended from time to time. RESPONSE TO HERTZEL DISCOVERY – 000001 – 000138. Furthermore, see the**

**Grievance Panel Guidelines dated December 19, 2019, bates numbered: RESPONSE TO HERTZEL DISCOVERY – 000780 – 000783 and documents bates numbered: RESPONSE TO HERTZEL DISCOVERY – 023228 – 023351.**

**If a violation is seen while the Violations Coordinator is roving around the community looking at properties, then a Stage 1 letter, also referred to as a courtesy letter, is sent out. The Stage 1 letter provides 30 days for the violation to be corrected, and requests that the violation be corrected. If not, a Stage 2 letter is sent indicating that the violation still exists and it must be corrected, if the violation is not corrected, then it will go before the Grievance Committee during its monthly meeting to decide whether the violation still exists and if so, to fine the property. Should a violation want to be disputed, the owner or his/her/their representative can go before the Grievance Committee, and if counsel is to appear as the representative, the Association requests notice of same prior to appearance at the meeting and the Association's General Counsel may be requested to attend or get involved as well.**

14. Identify all requests or applications submitted by Plaintiffs or any other individuals or entities regarding the construction, establishment, or use of a house of worship within the HOA community. In your response, describe Your role in reviewing, recommending, approving, or denying such requests.

**RESPONSE: The Defendant objects to this Interrogatory as it is vague, confusing, compound, and overbroad as to scope and time, and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. The "relevant period" of this Interrogatory is from January 1, 2012 through present and such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to requests that have no bearing and/or relation to the allegations in the First Amended Complaint. Furthermore, Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017. Without waiving the foregoing objections, from January 1, 2017 to present, Mendy Krinsky on behalf of the Plaintiff, Chabad Israeli Center, Inc., presented a Facilities Development Proposal in or around August 15, 2018 to the Association at a meeting held at its General Counsel's office in Boca Raton. RESPONSE TO HERTZEL DISCOVERY – 000755- 000762. Those in attendance on behalf of Loggers' Run included Ron Harp,**

**Ellen Winikoff, Bob Bernhardt, and Attorney Lou Caplan. Those in attendance on behalf of Chabad Israeli Center included Henya Hertzel, Mendy Krinsky, and Attorney Josh Spoont. The Defendant's employee, Bob Bernhardt, was present during the presentation but does not have any role in approving or denying such requests or proposals.**

15. Identify all communications between You and any local government agencies, zoning boards, the HOA, or other entities regarding the construction or establishment of new facilities, including houses of worship, within the HOA community.

    **RESPONSE: The Defendant objects to this Interrogatory as it is vague, and overbroad as to scope and time, and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. The "relevant period" of this Interrogatory is from January 1, 2012 through present and such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to requests that have no bearing and/or relation to the allegations in the First Amended Complaint. Without waiving the foregoing objections, Mendy Krinsky on behalf of the Plaintiff, Chabad Israeli Center, Inc., presented a Facilities Development Proposal in or around August 15, 2018 to the Association at a meeting held at its General Counsel's office in Boca Raton. RESPONSE TO HERTZEL DISCOVERY – 000755- 000762.**

    **In or around 2020, a Developer, John Marky, made a proposal for recreational land in the Association and made a monetary offer of approximately $800,000 for same. The Association decided not to proceed with his proposal as it wanted to keep its park and green space as-is.**

    **In or around 2021, a Developer, Toll Brothers, made a proposal to purchase 25 acres of recreational property at a meeting with the Association, represented by the Association's General Counsel, Property Manager who is an employee of the Defendant, and Executive Committee Members. The offer was for approximately $250,000 / acre, which the Association also decided not to go forward with as it wants to keep its parks and green space.**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

16. State whether You have issued warnings, citations, violations to or denied proposals for other residents or entities based on religious practices, and, if so, describe each instance, including the date, nature of the action taken, and the outcome.

    **RESPONSE: The Defendant objects to this Interrogatory as it is vague, and overbroad as to scope and time, and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. The "relevant period" of this Interrogatory is from January 1, 2012 through present and such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to requests that have no bearing and/or relation to the allegations in the First Amended Complaint, nor to Loggers' Run. Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017.Furthermore, the Interrogatory is not tailored to the community and/or association at issue. Without waiving the foregoing objections, the Defendant does not make decisions based on religion. The Defendant does not issue violations that are not authorized by the Association's Governing Documents.**

17. Describe any policies, procedures, or training materials used by You to ensure compliance with state and federal laws prohibiting religious discrimination in housing or property management.

    **RESPONSE: The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. The "relevant period" of this Interrogatory is from January 1, 2012 through present and such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to requests that have no bearing and/or relation to the allegations in the First Amended Complaint, nor to Loggers' Run. Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017.Furthermore, the Interrogatory is not tailored to the community and/or association at issue. The Defendant is not required by and/or mandated by Federal or Florida law to provide fair housing act training. Licensed Community Association Managers employed by the Defendant complete state mandated educational**

**requirements and an examination based on knowledge of state and federal laws and complete the state mandated hours of continuing education. From time to time, the Defendant will provide updates and webinars on changes in Florida Law to its property managers on a number of subjects**

18. Identify any reported or communicated interactions between Loggers' Run residents concerning Plaintiffs' religious practices, proposed Synagogue, or Chabad House. In your response, identify the parties who disclosed the interactions and the contents of the disclosures.

   **RESPONSE: The Defendant, as Property Manager, has received complaints concerning 21812 Reflection Lane and 21813 Reflection Lane while Chabad Israeli Center, Inc. was the registered owner of the properties. Please see: the Community Compliance Report for 21812 Reflection Lane and 21813 Reflection Lane, RESPONSE TO HERTZEL DISCOVERY – 000681 – 000694; RESPONSE TO HERTZEL DISCOVERY - 000770-000774; 000754 and IMG_4934.MOV; 000743 – 000747. Neighbors brought an Ad to the attention of the Association that the Plaintiff Chabad Israeli Center, Inc.'s intended alterations and use of 21813 Reflection Lane for nonresidential purposes. RESPONSE TO HERTZEL DISCOVERY – 000784-000786. Furthermore, at Town Hall meetings owners made it clear during the Town Hall clear they did not want to sell or develop Heritage Park, wanted to keep it as is; and there was a lack of interest in commercial use of the parks. Furthermore, owner(s) submitted suggestion slip(s) that indicated an intent to keep the Heritage Park green. RESPONSE TO HERTZEL DISCOVERY 000313 – 000315. In fact, at a Town Hall specifically to determine whether there was interest to construct a Clubhouse at Heritage Park, out of 80 owners who showed up, 65 opposed a clubhouse on any recreation area in the Association. RESPONSE TO HERTZEL DISCOVERY 000332 – 000335; Neighbors complain about numerous vehicles parking at and around 21812 Reflection Lane on the street, sidewalks, and grassy areas, fires in the backyard, and Owners not wanting to lose valuable green space if Heritage Park is sold or gifted to Chabad Israeli Center. Many of the complaints were conveyed verbally to the Property Manager.**

19. Identify any complaints or grievances filed against You alleging religious or racial discrimination, including in connection with property management or HOA services in any

residential community. For each, include the date, nature of the complaint, and its resolution.

**RESPONSE: The Defendant objects to this Request as overbroad as to scope and time and not reasonably calculated to lead to the discovery of evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case, is not tailored to the community and/or association at issue, and potentially seeks confidential employment related information of non-parties.**

20. Identify all documents, communications, or other records in the HOA's possession related to Plaintiffs, including their religious practices, the issuance of warnings, citations, or violations to Plaintiffs, the Chabad House, or the denial of Plaintiffs' request to build a synagogue.

**RESPONSE: The Defendant objects to this Request as to overbroad as to scope and time and not reasonably calculated to lead to the discovery of relevant evidence and includes information, documents and/or communications that may not be relevant to either party's claim or defense nor proportional to the needs of the case. Further, only two of four homes that Plaintiff Chabad Israeli Center, Inc. owned are at issue based on the claims in the First Amended Complaint and facts set forth therein that appear to form the basis of their claims. The "relevant period" of this Interrogatory is from January 1, 2012 through present, which in essence is over a decade of persons who may or may not have interacted with the Hertzels, just generally. However, such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint or claims currently asserted. Furthermore, Campbell was not the management company for the Association until 2015, and the Plaintiffs did not become an Owner in the Association until 2017. Additionally, any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs, including the Synagogue proposal, the Chabad House, or the use of property, in or around December 14, 2023 to present with and involving their Counsel are privileged and protected by the attorney-client privilege and/or the work product privilege as the Plaintiffs' Counsel sent a letter Re: Fair Housing Act Violations Against Orthodox Jews to the Association's General Counsel, and any discussions of the letter, strategy, and how to handle the December 14, 2023 letter and**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

**the anticipated litigation, and all subsequent communications with and involving their Counsel related to same are privileged. Information on any discussions or communications among HOA board members, officers, or the Defendant's employees regarding Plaintiffs that took place since the December 14, 2023 letter with and involving their Counsel has been withheld on the basis of privilege. Without waiving the foregoing objections, the Defendant produced documents responsive to the Request from January 1, 2017 to present in response to Plaintiffs' First Set of Requests for Production of Documents, bates numbered RESPONSE TO HERTZEL DISCOVERY – 000001 – 023451; IMG_4934.MOV; CALL_FOR_SERVICE_05-14-2024_20.15.42.0_-_1050_-_HQC22-Phone_Voice_7240501.WAV; Recordings of Board of Governors Meetings.**

Dated January 16, 2026                    Respectfully submitted,

    __/s/  *Ashley N. Landrum*__
ASHLEY N. LANDRUM, ESQ.
Florida Bar No. 111594
VERNIS & BOWLING OF PALM BEACH, P.A.
*Counsel for Defendants*
618 U.S. Highway One, Suite 200
North Palm Beach, Florida 33408
Telephone No. 561.775.9822
Facsimile No. 561.775.9821
Primary:         alandrum@florida-law.com
Secondary:    kpaxton@florida-law.com
                          pbfiling@florida-law.com

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Defendant's Response to First Set of Interrogatories

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 16, 2026, I electronically filed the foregoing documents with the Clerk of Court using CM/ECF, if permitted. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronically Filing generated by CM/ECF or in some other authorized manner for those Counsel or Parties who are not authorized to receive electronically Notice of Electronic Filing.

    /s/   **Ashley N. Landrum**
ASHLEY N. LANDRUM, ESQ.

## SERVICE LIST

JONES DAY
*Counsel for Plaintiffs*
600 Brickell Ave., Ste 3300
Miami, FL 33131
Telephone: (305) 7149714
epedrosa@jonesday.com
jbrinkerhoff@jonesday.com
Pruiz@jonesday.com

FIRST LIBERTY INSTITUTE
*Counsel for Plaintiffs*
1331 Pennsylvania Ave. NW Ste 1410
Washington, DC 20004
Telephone: (202) 921-4105
2001 W Plano Parkway Ste 1600
Plano, TX 75075
Telephone: (972) 941-4444
cvarone@firstliberty.org
jdys@firstliberty.org
dhacker@firstliberty.org

LAWSON HUCK GONZALES
*Counsel for Plaintiffs*
215 S Monroe St. Ste 320
Tallahassee, FL 32301
Telephone: (850) 825-4334
jason@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com