UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 9:24-cv-80640- CANNON

RABBI NAFTALY HERTZEL,
HENYA HERTZEL, and CHABAD
ISRAELI CENTER, INC., a Florida not-
for-profit corporation,

   Plaintiffs,

v.

LOGGERS' RUN, INC., CAMPBELL
PROPERTY MANAGEMENT AND
REAL ESTATE, INC., RONALD HARP,
and HARRY DIETZ,

   Defendants.

## DEFENDANT HARP'S AMENDED RESPONSE TO FIRST SET OF INTERROGATORIES
(Amended as to 1, 2, 3, 4, 7, 10, 11)

COMES NOW, the Defendant, RONALD HARP ("Defendant"), by and through his undersigned counsel, and hereby submits the following Response to Plaintiffs' First Set of Interrogatories:

1. State whether you have ever expressed any racially or religiously discriminatory remarks at any time, including relating to residents of Loggers' Run. If so, identify the context, date, and content of such remarks.

   **RESPONSE: The Defendant denies that he has expressed a discriminatory remark, whether based on race or religion.**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Harp Response to First Set of Interrogatories

2. Describe any comments or statements You have made regarding Plaintiffs or other Jewish residents of the community, including but not limited to comments related to their religion, ethnicity, or cultural practices.

   **RESPONSE:** The Defendant objects to this Request as it is overbroad as to scope and time, and not reasonably calculated to lead to the discovery of relevant evidence and includes information and/or communications that are not likely to be relevant to either party's claim or defense nor proportional to the needs of the case. The "relevant period" of this Interrogatory is from July 14, 2012 through present, and such a period of time is well outside the applicable statute of limitations timeframe for the Fair Housing Act claims and allegations in the First Amended Complaint, and may relate to general interactions that have no bearing and/or relation to the allegations in the First Amended Complaint, nor to Loggers' Run. Furthermore, the request encompasses any comment or statement, no matter the context or content of same, related to Plaintiffs generally, or other neighbors in the community about any subject at all.

3. Describe any communications, meetings, or interactions involving You regarding the Plaintiffs, including communications, meetings, or interactions related to Plaintiffs' religion, religious practices, the Synagogue or Chabad House. Include the dates, participants, and content of each communication or meeting.

   **RESPONSE:** Upon information and belief, and to the Defendant's best recollection, Loggers' Run and the Chabad Israeli Center, Inc. met to discuss a Facilities Development Proposal in or around August 15, 2018 presented on behalf of Chabad Israeli Center. Those in attendance on behalf of Loggers' Run included the Defendant, Ellen Winikoff, Bob Bernhardt, and Attorney Lou Caplan. Those in attendance on behalf of Chabad Israeli Center included Henya Hertzel, Mendy Krinsky, and Attorney Josh Spoont. Mendy Krinsky, on behalf of the Chabad Israeli Center, presented the Facilities Development Proposal to Loggers' Run.

   At the subsequent October 28, 2018 Board of Governors Meeting, the Defendant asked Mendy Krinsky to speak about the proposal from the Chabad Israeli Center to erect a synagogue, medical facility and a community center in Heritage Park. Mr. Krinsky was permitted to make the presentation about the project and its scope. Homeowners at the meeting expressed concerns about the project, specifics cannot be recalled. It was also at this meeting that the Board announced that it is not considering

moving forward with the project. However, the Chabad Israeli Center by and through its representative Mendy Krinsky, was permitted to present the proposal at an open Board of Governors' meeting.

The Defendant recalls being at one of Loggers' Runs' parks where a family was having a party with rides and vendors present when Mrs. Henya Hertzel approached him. During this interaction, Mrs. Hertzel indicated she wanted Loggers' Run to give the land to Plaintiffs for the Temple. The Defendant recalls responding that it will never happened, Loggers' Run cannot give the land to them. The residents had spoken and they wanted it to stay green space. The Defendant recalls apologizing but indicating that he could not help them because the property belongs to Loggers' Run and the residents made it clear they wanted it to stay green space. The Defendant does not recall exactly

Additionally, Loggers' Run hosted Town Hall meetings for owners to attend, and allow them to speak about the idea of a Clubhouse or Community Center for Loggers' Run, and even ideas for uses for Heritage Park. This was an idea brought up and encouraged by the Defendant to occur to get owner input. At the Town Halls, owners made it clear that they do not want to lose the green space at Heritage Park and did not want a Clubhouse and/or Community Center.

4. Identify all warnings, citations, violations, or fines issued to Plaintiffs within the past twelve years, including the date, nature of the citation, and the reason for issuing it.

   **RESPONSE:** The Defendant recalls that when Plaintiffs were remodeling the house at 21813 Reflection Lane the Winding Lakes II residents rose up with a petition indicating they did not want a temple there nor did they want traffic problems. The Defendant is unable to recall the specifics as to the warnings, citations and/or violations issued for the Plaintiffs' properties as he is not and was not involved in that process.

5. Describe in detail the process used by the HOA to determine when and to whom citations, violations, or fines are issued. In your response, please identify all individuals involved in the decision-making process and any criteria, policies, or guidelines used.

   **RESPONSE:** The Defendant was not involved in these decisions or part of the process, however, to the best of the Defendant's recollection, Harry Dietz, or his successor, would tour the Loggers' Run neighborhoods to see if owners were in compliance with

Loggers' Run's rules. Harry Dietz, or his successor, would refer to and go by the Loggers' Run's Rules as almost rules of engagement to determine who was or was not in compliance, and issue letters accordingly. If a home was not in compliance it was noted, a picture was taken and an initial letter sent to the owner identifying the issue. If the violation was not corrected, then a violation letter and the process would begin, including the potential to fine the owner. This process would entail meeting with the violation committee and an owner being given so many days to resolve the violation, and, if not resolved, then an owner could be fined up to $1,000. If the fine was not paid, it could become a lien on the property.

6. State whether you were involved in the decision to issue any warnings, citations, violations, or fines to Plaintiffs. If so, describe your involvement, including any discussions, meetings, or communications related to those decisions.

   **RESPONSE:** The Defendant was not involved in these decisions.

7. Explain the HOA's process for reviewing and approving or denying requests to construct new buildings or structures or requests by non-residents or non-property owners to use or operate shared facilities within the jurisdiction of Loggers' Run. Identify all criteria, guidelines, and governing documents considered in making such decisions.

   **RESPONSE:** The Defendant objects to this Interrogatory as to the phrase "shared facilities" as it is vague and confusing and unclear what is intended by the phrase itself. Loggers' Run's decisions are governed by Loggers' Run's Architectural Control Committee Guidelines, its Architectural Control Committee, and its Board of Governors pursuant to the Declaration of Protective Covenants and Restrictions and the Replat Declarations, the Articles of Incorporation and Bylaws of Loggers' Run, Inc., as they may be amended from time to time. Furthermore, sub-divisions may also have additional restrictions to which owners are subject, including their own respective board of directors and/or architectural control committees in addition to the Loggers' Run's governing body. See documents produced in response to Request for Production, bates numbered RESPONSE TO HERTZEL DISCOVERY – 000001 – 000138.

8. State whether you were involved in the decision to deny, delay, or not address Plaintiffs' requests to build a synagogue within Loggers' Run community. If so, describe your

Page 4

involvement, including any discussions, meetings, or communications related to those decisions.

RESPONSE. Upon information and belief, and to the Defendant's best recollection, Loggers' Run and the Chabad Israeli Center, Inc. met to discuss a Facilities Development Proposal in or around August 15, 2018 presented on behalf of Chabad Israeli Center. Those in attendance on behalf of Loggers' Run included the Defendant, Ellen Winikoff, Bob Bernhardt, and Attorney Lou Caplan. Those in attendance on behalf of Chabad Israeli Center included Henya Hertzel, Mendy Krinsky, and Attorney Josh Spoont. Mendy Krinsky, on behalf of the Chabad Israeli Center, presented the Facilities Development Proposal to Loggers' Run.

At the October 28, 2018 Board of Governors Meeting, Mendy Krinsky was asked to speak about the proposal from the Chabad Israeli Center to erect a synagogue, medical facility and a community center in Heritage Park. Mr. Krinsky was permitted to make the presentation about the project and its scope. Homeowners at the meeting expressed concerns about the project, specifics cannot be recalled. It was also at this meeting that the Board announced that it is not considering moving forward with the project. However, the Chabad Israeli Center by and through its representative Mendy Krinsky, was permitted to present the proposal at an open Board of Governors' meeting.

Additionally, Loggers' Run hosted Town Hall meetings for owners to attend, and allow them to speak about the idea of a Clubhouse or Community Center for Loggers' Run, and even ideas for uses for Heritage Park. This was an idea brought up and encouraged by the Defendant to occur to get owner input. At the Town Halls, owners made it clear that they do not want to lose the green space at Heritage Park and did not want a Clubhouse and/or Community Center

9. Explain the reasons for the HOA's denial, delay, or refusal to address Plaintiffs' request to construct a Synagogue, including all factors considered and the specific basis for the denial and refusal to address the request.

RESPONSE. Upon information and belief, and to the Defendant's best recollection, Loggers' Run and the Chabad Israeli Center, Inc. met to discuss a Facilities Development Proposal in or around August 15, 2018 presented on behalf of Chabad Israeli Center. Those in attendance on behalf of Loggers' Run included the Defendant, Ellen Winikoff, Bob Bernhardt, and Attorney Lou Caplan. Those in

attendance on behalf of Chabad Israeli Center included Henya Hertzel, Mendy Krinsky, and Attorney Josh Spoont. Mendy Krinsky, on behalf of the Chabad Israeli Center, presented the Facilities Development Proposal to Loggers' Run.

At the October 28, 2018 Board of Governors Meeting, Mendy Krinsky was asked to speak about the proposal from the Chabad Israeli Center to erect a synagogue, medical facility and a community center in Heritage Park. Mr. Krinsky was permitted to make the presentation about the project and its scope. Homeowners at the meeting expressed concerns about the project, specifics cannot be recalled. It was also at this meeting that the Board announced that it is not considering moving forward with the project. However, the Chabad Israeli Center by and through its representative Mendy Krinsky, was permitted to present the proposal at an open Board of Governors' meeting.

Additionally, Loggers' Run hosted Town Hall meetings for owners to attend, and allow them to speak about the idea of a Clubhouse or Community Center for Loggers' Run, and even ideas for uses for Heritage Park. This was an idea brought up and encouraged by the Defendant to occur to get owner input. At the Town Halls, owners made it clear that they do not want to lose the green space at Heritage Park and did not want a Clubhouse and/or Community Center

10. Identify any nonresidential buildings or structures that have been approved for construction within the HOA's jurisdiction in the past twelve years. For each, provide the type of property, the date of approval, and the criteria considered in granting approval.

    **RESPONSE: The Defendant does not believe Loggers' Run has approved any nonresidential buildings or structures.**

11. Describe any complaints, objections, or concerns received by the HOA regarding the Plaintiffs' religious practices, the proposed construction of the Synagogue, the Chabad House, or the use of property. Include the nature of each complaint, the date received, and the steps taken in response.

    **RESPONSE: The Defendant objects to this Interrogatory as it is vague and unclear as to what the term/phrase "use of property" is referring to or what property is encompassed in that phrase or the subject of that phrase, so the Defendant is unsure of what is being requested to provide a response to that phrase. The Defendant recalls**

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Harp Response to First Set of Interrogatories

neighbors complaining about numerous vehicles parking at and around 21812 Reflection Lane in Boca Raton, Florida 33428, concern about Loggers' Run losing valuable green space if Heritage Park is sold or gifted to Chabad Israeli Center, potential increase in traffic if Heritage Park is sold for a commercial use, and lack of interest from Loggers' Run owners to want to pay for and maintain a Clubhouse, or even use a Clubhouse. The owners in Loggers' Run did not want to lose the green space of Heritage Park.

Loggers' Run hosted Town Hall meetings for owners to attend, and allow them to speak about the idea of a Clubhouse or Community Center for Loggers' Run, and even ideas for uses for Heritage Park. This was an idea brought up and encouraged by the Defendant to occur to get owner input. At the Town Halls, owners made it clear that they do not want to lose the green space at Heritage Park and did not want a Clubhouse and/or Community Center.

The Defendant recalls that when Plaintiffs were remodeling the house at 21813 Reflection Lane the Winding Lakes II residents rose up with a petition indicating they did not want a temple there nor did they want traffic problems.

12. Identify and describe any training or guidance provided to You or other HOA board members on issues related to religious discrimination and fair housing practices.

**RESPONSE:** The Defendant does not recall attending any fair housing training. During the Defendant's time on the Board of Governors, he was not mandated by the Homeowners Association Act, including § 720.3033, to attend fair housing training.

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Harp Response to First Set of Interrogatories

## VERIFICATION OF INTERROGATORIES

STATE OF FLORIDA )
COUNTY OF Palm Beach )

RONALD HARP

By: _/s/ Ronald Harp_

BEFORE ME, the undersigned authority, personally appeared RONALD HARP, to me known to be the person described and who answered the foregoing and who acknowledged before me that he/she/they executed the same freely and voluntarily for the purposes therein expressed.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my seal this 16 day of JANUARY, 2026.

_/s/ Fatima Kaiser_
NOTARY PUBLIC

My Commission Expires:

FATIMA KAISER
MY COMMISSION # HH 519791
EXPIRES: July 14, 2028

<u>Hertzel v. Loggers' Run, Inc.</u>
Case No. 9:24-cv-80640-AMC
Harp Response to First Set of Interrogatories

Dated: January 20, 2026                Respectfully submitted,

                               **  /s/   Ashley N. Landrum**
                               ASHLEY N. LANDRUM, ESQ.
                               Florida Bar No. 111594
                               VERNIS & BOWLING OF PALM BEACH, P.A.
                               *Counsel for Defendants*
                               618 U.S. Highway One, Suite 200
                               North Palm Beach, Florida 33408
                               Telephone No. 561.775.9822
                               Facsimile No. 561.775.9821
                               Primary:         alandrum@florida-law.com
                               Secondary:    kpaxton@florida-law.com
                                                       pbfiling@florida-law.com

Hertzel v. Loggers' Run, Inc.
Case No. 9:24-cv-80640-AMC
Harp Response to First Set of Interrogatories

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 20, 2026, I served a copy of the foregoing document on all counsel of record.

      /s/   **Ashley N. Landrum**
ASHLEY N. LANDRUM, ESQ.

## SERVICE LIST

JONES DAY
*Counsel for Plaintiffs*
600 Brickell Ave., Ste 3300
Miami, FL 33131
Telephone: (305) 7149714
epedrosa@jonesday.com
jbrinkerhoff@jonesday.com
Pruiz@jonesday.com

FIRST LIBERTY INSTITUTE
*Counsel for Plaintiffs*
1331 Pennsylvania Ave. NW Ste 1410
Washington, DC 20004
Telephone: (202) 921-4105
2001 W Plano Parkway Ste 1600
Plano, TX 75075
Telephone: (972) 941-4444
cvarone@firstliberty.org
jdys@firstliberty.org
dhacker@firstliberty.org

LAWSON HUCK GONZALES
*Counsel for Plaintiffs*
215 S Monroe St. Ste 320
Tallahassee, FL 32301
Telephone: (850) 825-4334
jason@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com